CROSSROADS COGENERATION
CORPORATION, Plaintiff,

v.

ORANGE AND ROCKLAND UTILITIES,
INC., Defendant.

Civil Action No. 96–5287.

United States District Court,
D. New Jersey.

June 30, 1997.
As Amended Aug. 21, 1997.

DeCotiis, Fitzpatrick & Gluck by William Harla, Teaneck, NJ, for Plaintiff.

Morgan, Lewis & Bockius by Robert A. White, Princeton, NJ, Morgan, Lewis & Bockius by Glen R. Stuart, Stephen Paul Mahinka, Elizabeth A. Giuliani, Philadelphia, PA, Philip Goldstein, Orange and Rockland Utilities, Inc., Pearl River, NY, for Defendant.

## OPINION

BISSELL, District Judge.

This matter comes before the Court on defendant's motion to dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(6) and plaintiff's cross–motion for partial summary judgment. Plaintiff, Crossroads Cogeneration Corporation, filed a five–count Complaint in this Court on November 12, 1996, seeking damages from and injunctive relief against defendant, Orange and Rockland Utilities, Inc., for breach of contract, breach of the covenant of good faith and fair dealing, anticipatory repudiation and violations of the federal antitrust laws. The Court has jurisdiction over plaintiff's federal antitrust claims pursuant to 28 U.S.C. § 1337 and over its contract claims pursuant to 28 U.S.C. § 1332.

## FACTS

Plaintiff is a Delaware corporation with its principal place of business in Mahway, New Jersey. It is an independent, non–regulated producer of electric power that owns and operates a cogeneration [1] facility which meets the applicable operating and efficiency standards and ownership criteria necessary to classify it as a "qualifying facility" under the federal Public Utility Regulatory Policies Act ("PURPA"), Public Law No. 95–617, 92 Stat. 3117 (1978) (codified at 16 U.S.C. § 824a et seq.) and the implementing regulations [2] promulgated by the Federal Energy Regulatory Commission ("FERC"). (Compl., ¶¶ 11–16).

Defendant is a New York corporation with its principal place of business in Rockland County, New York. It is a public utility engaged (along with two corporate affiliates) in the supply and delivery of electricity in Rock-

land and Orange Counties in New York, Pike County, Pennsylvania and Bergen County, New Jersey. (Id., ¶¶ 18–20). Defendant purchases electricity from relatively small (in terms of output capacity), independent generators of energy such as plaintiff. Defendant is virtually the sole provider of electricity at retail cost to residential, commercial and industrial customers in the above-mentioned counties. (Id., ¶ 22).

Pursuant to PURPA, qualifying facilities (or "QF's"), such as plaintiff, are exempt from regulation under the Federal Power Act and from state law or regulation respecting the rates of electric utilities and the financial and organizational regulation of electric utilities. Instead, FERC regulations set forth the principal obligations of public utilities, such as defendant, in dealing with QF's. State administrative agencies such as the New York Public Service Commission ("NYPSC") have promulgated regulations implementing the FERC regulations' application to QF's. The FERC regulations require the state administrative agencies to actively supervise the formation and performance of QF contracts. Thus, under the provisions of the New York statute establishing the NYPSC, QF contracts must be submitted to the NYPSC for review and approval. See N.Y. Pub. Serv. Law § 66–c(1).

On October 2, 1987, defendant entered into a contract (the Power Service Agreement, or the "Agreement") with an energy supplier for the purchase of electric energy for a period of 20 years. That supplier assigned the Agreement to plaintiff on July 31, 1990. (Id., ¶¶ 24–25; Defendant's Br., Exh. 1). The Agreement provided, inter alia, that it be approved by NYPSC, which approval was eventually obtained on December 2, 1988. (Defendant's Br., Exh. 1 at Article XIX and Exh. 2 at 1–4). The Agreement contains a New York choice of law provision. (Id., Exh. 1 at Article XXI(6)). The dispute giving rise to the instant litigation arose in May 1996, when plaintiff installed a new 7 MW gas turbine at its Bergen County plant and began delivering to defendant electricity gener-

---

**1.** Cogeneration is the production of electricity and useful thermal energy at a single facility.

**2.** These are cited at 18 C.F.R. §§ 292.203(b), 292.205(a) and (b), and 292.206.

ated by the new turbine. (Compl., ¶¶ 41, 47–48). Defendant objected to the additional energy being provided, because in its view, the Agreement between the parties, as approved by the NYPSC, only required it to purchase (at the contract price) energy generated by the equipment plaintiff owned at the time of the assignment of the Agreement to it. Plaintiff, on the other hand, argued that the Agreement required defendant to purchase (at the contract price) all the energy plaintiff was capable of generating up to 4MW. (*Id.*, ¶¶ 54–56, 74).

On August 12, 1996, prior to plaintiff's filing the Complaint in this action, defendant filed a Petition for a Declaratory Ruling with the NYPSC seeking a declaration that it was not obligated to purchase electricity from plaintiff in excess of that generated by the plant's original generating equipment. (*See* Defendant's Br., Exh. 2 at 1). Plaintiff filed a Response on August 30, 1996, wherein it conceded the NYPSC's jurisdiction over the approval of the Agreement (which took place in 1988), but challenged the NYPSC's jurisdiction to resolve the contract dispute brought before it by defendant. (*See id.* at 2–3). On November 6, 1996, the NYPSC issued a ruling in favor of defendant. In its written Opinion dated November 29, 1996, the NYPSC specifically held that (1) it had jurisdiction to interpret and explain its approval of the Agreement, and (2) its December 2, 1988 approval of the Agreement limited defendant's obligation to energy generated by plaintiff's original equipment. (*See id.* at 3–4).

Six days after the NYPSC announced its decision, plaintiff instituted the instant litigation. Plaintiff states five causes of action in its Complaint. The first four are state law claims. They are as follows: the First Cause of Action seeks damages for breach of contract (specifically, for breach of the Power Sales Agreement (the "Agreement") entered into by the parties on October 2, 1987); the Second Cause of Action states a claim for breach of the implied covenant of good faith and fair dealing; the Third states a claim for anticipatory breach of contract; and the Fourth seeks a declaratory judgment as to the parties' rights and obligations under the Agreement. (*See* Compl., ¶¶ 64–83). The Fifth Cause of Action seeks relief for alleged violations of (1) Section 2 of the Sherman Act, 15 U.S.C. § 2; (2) Section 2 of the Clayton Act, as amended by the Robinson–Patman Act, 15 U.S.C. § 13. (*See id.*, ¶¶ 84–94).

## *ANALYSIS*

### I. *Defendant's Motion to Dismiss the Complaint*

#### A. *Standard for Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6)*

 Fed.R.Civ.P. 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law. *Neitzke v. Williams,* 490 U.S. 319, 326, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989) (citing *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)). *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In disposing of a motion to dismiss, the court operates on the assumption that the factual allegations in the complaint or counterclaim are true. *Neitzke,* 490 U.S. at 326–27, 109 S.Ct. at 1832. A motion to dismiss may be granted if the opposing party would not be entitled to relief under any set of facts consistent with the allegations in the complaint or counterclaim. As the Supreme Court stated in *Neitzke:*

> [n]othing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," *Hishon, supra* at 73, 104 S.Ct. [at 2232,] a claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one. What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations.

(*Id.* at 327, 109 S.Ct. at 1832).

#### B. *Plaintiff's Fifth Cause of Action (Asserting Federal Antitrust Claims) is Dismissed for Failure to State a Claim Upon Which Relief can be Granted.*

##### (1) *Alleged violations of Section 2 of the Sherman Act*

In its Fifth Cause of Action, plaintiff alleges both a claim of monopolization and of

attempted monopolization under Section 2 of the Sherman Act. (Compl., ¶¶ 89, 90). Section 2 of the Sherman Act provides that: "[e]very person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony...." 15 U.S.C. § 2.

In order to state a claim for monopolization, a plaintiff must allege "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historical accident." *Schuylkill Energy Resources, Inc. v. Pennsylvania Power & Light Company*, 113 F.3d 405, 412–13 (3d Cir.1997) (quoting *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 197 (3d Cir.1992), and *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1704, 16 L.Ed.2d 778 (1966)). To state a claim for attempted monopolization, a plaintiff must allege "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize [the relevant market] and (3) a dangerous probability of achieving a monopoly power." *Schuylkill*, at 413 (quoting *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456, 113 S.Ct. 884, 890–91, 122 L.Ed.2d 247 (1993)).

Accepting as true all of the allegations in the Complaint, plaintiff nevertheless fails to make out a claim for either the offense of monopolization or attempted monopolization, because (1) it fails to plead a relevant market and (2) it fails to plead that defendant possesses or dangerously threatens to possess monopoly power in such a relevant market. Both of plaintiff's Sherman Act claims require the identification of the relevant market within which the alleged anticompetitive activities can be assessed. *See Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 177, 86 S.Ct. 347, 350, 15 L.Ed.2d 247 (1965). Plain-

tiff contends that it has alleged injury to competition in the market "for electricity" (*see* Plaintiff's Opp. Br. at 23); however, nowhere in the Complaint is such a market alleged. Moreover, even if the Court were to accept plaintiff's argument that the relevant market can be ascertained by reading the Complaint as a whole, the Court would nevertheless be left with only vague statements of the market "for electricity" to which plaintiff refers. For example, the Court would be forced to guess as to whether plaintiff means to identify as the relevant market "the supply of electric power" or "the purchase of long term wholesale power." (Comp., ¶¶ 85, 90).

Further, plaintiff fails, as a matter of law, to sufficiently allege monopoly power. Plaintiff merely states that defendant is the sole provider of electricity to certain customers in the counties it services. (*See* Compl., ¶¶ 22; Plaintiff's Opp. Br. at 23–24). Plaintiff fails to allege such necessary facts as defendant's market share in the markets in which plaintiff is a competitor or the barriers that exist which prevent plaintiff's entry into such markets. These deficiencies in the Complaint mandate dismissal of plaintiff's Sherman Act claims. *See Barr Labs., Inc. v. Abbott Labs.*, 978 F.2d 98, 112–13 (3d Cir.1992).

Additionally, plaintiff fails to allege an injury cognizable under the antitrust laws. As was true of the plaintiff in *Schuylkill*, plaintiff here is not a direct competitor of defendant but, rather, it is defendant's supplier. "A plaintiff who is neither a competitor nor a consumer in the relevant market does not suffer antitrust injury." *Schuylkill*, at 415 (quoting *Vinci v. Waste Management, Inc.*, 80 F.3d 1372 (9th Cir.1996)). There is some evidence in the record that plaintiff has the potential to be or may sometime in the future become a competitor of defendant, but that prospect is speculative, at best. Second, the basis of plaintiff's claims here is that in refusing to pay the contract price for energy generated by the new equipment, defendant violated the parties' power purchase agreement.[3] As the Third Circuit explained in

---

**3.** In *Schuylkill,* the Third Circuit affirmed the dismissal of an independent power producer's

antitrust claims on the ground that there were insufficient allegations of injury to competition

*Schuylkill,* such actions are not a concern of the federal antitrust laws, but are instead, an issue to be decided according to principles of contract law and PURPA. *See Schuylkill,* at 417–18. *See also Kamine/Besicorp Allegany L.P. v. Rochester Gas & Elec. Corp.,* 908 F.Supp. 1194, 1204 (W.D.N.Y.1995). Defendant's actions may have caused injury to plaintiff, but they did not cause injury to competition in a defined market. This is not the sort of injury the antitrust laws were meant to prevent.

### (2) Alleged violation of Section 13 of the Robinson–Patman Act

 In its Fifth Cause of Action, plaintiff also alleges that defendant offered a customer of plaintiff a reduced price for electricity not offered to all customers and that such action constitutes a violation of the Robinson–Patman Act. (Compl., ¶¶ 49, 62–63, 88, 91). The Robinson–Patman Act, which amended § 2 of the Clayton Act, is phrased more broadly than the Sherman Act. It prohibits price discrimination "where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly." 15 U.S.C. § 13(a). In order to properly state a claim for a violation of the Robinson–Patman Act, a plaintiff must allege facts to show that: (1) the defendant made at least two contemporaneous sales of the same commodity at different prices to different purchasers; and (2) the effect of such discrimination was to injure competition. *See Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.,* 509 U.S. 209, 220–27, 113 S.Ct. 2578, 2586–90, 125 L.Ed.2d 168 (1993). *See also O. Hommel Co. v. Ferro Corp.,* 659 F.2d 340, 346–48 (3d Cir.1981), *cert. denied,* 455 U.S. 1017, 102 S.Ct. 1711, 72 L.Ed.2d 134 (1982).

Plaintiff does not allege, nor does it present facts which suggest, that defendant in fact made sales of electricity to any purchaser at a reduced price. Rather, plaintiff's entire claim is based on its assertion that defendant "offered" to sell electricity at a reduced rate to Crossroads Corporate Cen-

ter, one of plaintiff's customers. Both the Fourth and Eighth Circuits have held that a plaintiff's failure to allege two completed sales at a reduced price is grounds for dismissal of a Robinson–Patman Act claim under Fed.R.Civ.P. 12(b)(6). *See Terry's Floor Fashions, Inc. v. Burlington Indus.,* 763 F.2d 604, 615 (4th Cir.1985), and *Fusco v. Xerox Corp.,* 676 F.2d 332, 334–38 (8th Cir. 1982).

Further, plaintiff fails to allege the second essential element of establishing a price discrimination claim under the Robinson–Patman Act in that it does not set forth facts which show injury to competition as a result of defendant's alleged price discrimination. Plaintiff's entire Robinson–Patman claim is premised on defendant's injury to plaintiff, not to competition, which is not the type of "predatory conduct" the antitrust laws are meant to prevent. *See, e.g. Hommel,* 659 F.2d at 348. As plaintiff fails to meet the threshold requirements necessary for stating a claim under the Robinson–Patman Act, this claim must be dismissed.

### C. Plaintiff's First, Third and Fourth Causes of Action are Dismissed

 Defendant argues that plaintiff's First, Third and Fourth Causes of Action should be dismissed for the reason that plaintiff is collaterally estopped from litigating the issue of whether defendant breached its obligations under the Agreement and that this is the central issue upon which these three claims are based. As an initial matter, the Court addresses plaintiff's contention that defendant's motion to dismiss must be converted to a motion for summary judgment because defendant relied upon a matter outside the pleadings to support its collateral estoppel claim, namely the decision rendered by the NYPSC on November 29, 1996. A court may take judicial notice of decisions of administrative bodies without converting motions to dismiss into motions for summary judgment. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1197 (3d Cir.1993). The NYPSC is an ad-

---

or harm to consumers. There, as here, the independent power producer was suing an electric utility company that had cut back on the amount of energy it was purchasing from that independent producer.

ministrative body, and its ruling on the contract between the parties to this action is a matter of public record. Accordingly, the Court may properly consider that decision and adjudicate its collateral estoppel effect without converting defendant's present motion to dismiss into a motion for summary judgment.

 Turning now to the question of whether plaintiff is barred by the doctrine of collateral estoppel from going forward with the claims identified in the first four causes of action in the Complaint, the Court thinks it prudent, at the outset of this analysis, to first discuss the basis for the Court's subject matter jurisdiction over the plaintiff's claims in these four counts. Plaintiff premises the Court's jurisdiction over its Fourth Cause of Action, which seeks a declaratory judgment of its rights and defendant's obligations under the Agreement, on 28 U.S.C. § 1331, stating that this action "is based on rights arising under the federal Public Utility Regulatory Policies Act of 1978 ('PURPA'), 16 U.S.C. § 823a *et seq.*" (Compl., ¶ 8). Overlooking the fact that plaintiff does not point the Court to the specific section of PURPA under which its claims purportedly arise, the Court determines that, contrary to plaintiff's jurisdictional statement, the Court does not have a § 1331 basis for jurisdiction over this action.

While plaintiff alleges against defendant various violations of contract law, nowhere in the complaint does plaintiff allege that defendant violated PURPA; rather, PURPA becomes relevant only in that it defines the rights and duties of the parties under the Agreement plaintiff claims was breached. A declaratory judgment is a procedural vehicle only; it affects only the remedies available in federal court, not a federal court's jurisdiction. *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 15, 17–21, 103 S.Ct. 2841, 2849, 2850–52, 77 L.Ed.2d 420 (1983). *See also Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). The Court's sub-

ject matter jurisdiction over plaintiff's cause of action seeking a declaratory judgment, like its jurisdiction over plaintiff's three other contract claims, is premised on diversity of citizenship.

In adjudicating defendant's motion to dismiss plaintiff's First, Third and Fourth Causes of Action, the first question the Court must answer is whether, as defendant contends, plaintiff is collaterally estopped from bringing these claims before this Court. Defendant asserts that all three of these claims are premised on plaintiff's contention that defendant breached its obligations under the terms of the Agreement by refusing to pay the contract price for energy generated by the new gas turbine installed by plaintiff in May 1996. Defendant asserts that the nature of its obligation to plaintiff under the Agreement was the subject of its Petition for a Declaratory Ruling by the NYPSC and that under the doctrine of collateral estopped, plaintiff is precluded from relitigating in this action the very issue already litigated before and decided by the NYPSC in November 1996.

 The Court determines that plaintiff's First, Third and Fourth Causes of Action are barred by principles of both collateral estoppel and *res judicata*. *Res judicata* and collateral estoppel are related doctrines that are based on the principle that a party should not be permitted to relitigate issues already decided against it. The constitutional directive regarding full faith and credit (as further implemented by federal statute) requires that "judicial proceedings ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." 28 U.S.C. § 1738; *Durfee v. Duke*, 375 U.S. 106, 109, 84 S.Ct. 242, 244, 11 L.Ed.2d 186 (1963). The question under either doctrine thus becomes what preclusive effect would a New York state court give a determination made by an administrative agency, specifically the NYPSC.[4]

---

4. As plaintiff is not seeking a review of the NYPSC's determination on the merits, the body of cases adjudicated pursuant to Article 78 of New York's Civil Practice Law and Rules, a

unique procedural device available for challenging, *inter alia*, the decisions of administrative agencies, is inapposite. Here, plaintiff is collaterally attacking the decision of an administrative

In *Allied Chem. v. Niagara Mohawk Power Corp.*, 72 N.Y.2d 271, 532 N.Y.S.2d 230, 232, 528 N.E.2d 153, 155 (1988), *cert. denied*, 488 U.S. 1005, 109 S.Ct. 785, 102 L.Ed.2d 777 (1989), the New York Court of Appeals set forth a test for determining whether an administrative proceeding may be characterized as "quasi-judicial" in nature, such that decisions rendered pursuant to its adjudicatory authority may be given preclusive effect in subsequent proceedings. The reviewing court must examine several factors: (1) whether the agency has statutory authority to act adjudicatively; (2) whether the procedures used in the administrative proceeding assured that the information presented to the agency was sufficient both quantitatively and qualitatively, so as to permit confidence that the facts asserted were adequately tested; (3) the parties' expectations; and (4) whether according a preclusive effect would be consistent with the agency's scheme for administration.

In *Allied*, the New York Court of Appeals gave preclusive effect to a Declaratory Ruling issued by the NYPSC in a contractual dispute between an electric utility and an independent power producer. As is the case in the present litigation, the plaintiff in *Allied* was issued an unfavorable determination by the NYPSC and, rather than seek direct review of that decision, proceeded to collaterally attack the NYPSC's determination in a subsequent state court proceeding.[5] The *Allied* court specifically considered all four factors relevant to determining whether the NYPSC was a quasi-judicial body and held there was no doubt that an NYPSC ruling could be given preclusive effect. (*Id.*, 532 N.Y.S.2d at 233–34, 528 N.E.2d at 156–57).

Having determined that under New York law, the Declaratory Ruling issued by the NYPSC may be given preclusive effect, the Court turns its attention to the question of whether the necessary elements for application of *res judicata* and/or collateral estoppel are present here. *Res judicata* (or "claim preclusion") embodies the idea that a final judgment of a claim on the merits between the same parties resolves both that claim and all others arising out of the same transaction. *Ryan v. New York Tel. Co.*, 62 N.Y.2d 494, 478 N.Y.S.2d 823, 824–27, 467 N.E.2d 487, 488–91 (1984). Collateral estoppel (or "issue preclusion") prevents relitigation by a party of an issue decided against it in prior litigation in which it had a full and fair opportunity to litigate the issue. (*Id.*) Both doctrines (1) avoid the unfairness that would result from allowing a party to obtain multiple hearings on the same issue, (2) prevent inconsistent judgments and (3) conserve judicial resources. *See id.; International 800 Telecom Corp. v. Kramer, Levin, Nessen, Kamin & Frankel*, 155 Misc.2d 975, 978, 591 N.Y.S.2d 313 (N.Y.Sup.Ct.1992).

New York takes a transactional analysis approach to *res judicata* issues. Under that approach, all claims which could have been brought out of a transaction are barred by a prior final resolution. *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 445 N.Y.S.2d 687, 429 N.E.2d 1158 (1981); *International 800 Telecom*, 155 Misc.2d at 978, 591 N.Y.S.2d 313. This furthers the interest of finality. In the present case, new York's doctrine of *res judicata* bars plaintiff from asserting here, for the second time, the claims embodied in its First, Third and Fourth causes of action. Those claims were already litigated between these parties before the NYPSC, which reached a final determination of those claims on the merits.

Plaintiff is also barred by the closely-related doctrine of collateral estoppel from relitigating the same issues already decided against it. Under New York law, three elements must be established in order for collateral estoppel to apply: (1) the issue in the

agency and, thus, the standards of review applicable in Article 78 proceedings are irrelevant for present purposes.

**5.** The Court notes that by operation of statute in New York, plaintiff had a window of opportunity (30 days) in which to seek a rehearing of its contractual dispute before the NYPSC. Plaintiff,

however, did not avail itself of this opportunity. (*See* Defendant's Reply Br. at 14, n. 13). There is some indication that plaintiff has filed a direct appeal of the NYPSC's determination in state court in New York, presumably in an Article 78 proceeding.

present proceeding must be identical to the issue in the prior proceeding; (2) the issue decided in the prior proceeding must have been material to that proceeding; and (3) the party against whom the doctrine is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding. *Ryan*, 478 N.Y.S.2d at 826–27, 467 N.E.2d at 490–91. When applying the doctrine of collateral estoppel to an administrative determination, the *Ryan* court determined that the party seeking to invoke the doctrine bears the burden of demonstrating the identical nature and decisiveness of the issue, the party opposing the application of the doctrine bears the burden of establishing the absence of a full and fair opportunity to litigate the issue in the prior proceeding. (*Id.* at 827, 467 N.E.2d at 491).

The Court determines that defendant, as the party seeking to invoke the doctrine of collateral estoppel, has met its burden. (*See* the NYPSC's written Opinion at Defendant's Br., Exh. 2 at 1–4). Plaintiff does not dispute either the identity or decisiveness of the issue but, rather, challenges the application of the doctrine here on the ground that the NYPSC lacked jurisdiction to render its decision in the first instance. (*See* Plaintiff's Opp. Br. at 12–21). Plaintiff argues that NYPSC's jurisdiction over the Agreement ended upon its approval of the Agreement in 1988 and that, therefore, "its determination can be given no effect." (*Id.* at 12). Plaintiff made the same argument to the NYPSC in its Response to Defendant's Petition for a Declaratory Ruling, and the NYPSC expressly determined that it did, in fact, have jurisdiction to resolve the particular contractual dispute brought before it.

The issue for this Court to address is not whether the NYPSC, in fact, had jurisdiction to render the decision it did but, rather, whether the collateral estoppel doctrine bars plaintiff's relitigation not just of the underlying contract issues raised before the NYPSC but of the question of the propriety of the NYPSC's jurisdiction to hear the dispute, as well. This issue is often referred to as "jurisdictional finality." In *Underwriters National Assurance Co. v. North Carolina Life and Accident and Health Ins. Guar. Assn.*,

455 U.S. 691, 706, 102 S.Ct. 1357, 1366–67, 71 L.Ed.2d 558 (1982), the United States Supreme Court reaffirmed the rule of jurisdictional finality established in *Durfee*, 375 U.S. at 113–15, 84 S.Ct. at 246–47, stating that "the principles of res judicata apply to questions of jurisdiction as well as to other issues." *See also Treinies v. Sunshine Mining Co.*, 308 U.S. 66, 78, 60 S.Ct. 44, 51, 84 L.Ed. 85 (1939) (holding that collateral estoppel applied to a court's determination of its own jurisdiction). Holding that collateral estoppel applied to a determination made by the Rehabilitation Court (a lower court in North Carolina) about its own subject matter jurisdiction over a particular dispute, the Supreme Court stated:

> Any doubt about this proposition [of jurisdictional finality] was definitely laid to rest in *Durfee v. Duke* (citation omitted), where this Court held that "a judgment is entitled to full faith and credit—*even as to questions of jurisdiction*—when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment."

*Underwriters National*, 455 U.S. at 706, 102 S.Ct. at 1367 (emphasis added). *See also Stoll v. Gottlieb*, 305 U.S. 165, 172, 59 S.Ct. 134, 137–38 (1938).

In the instant case, plaintiff fully and fairly litigated the issue of the NYPSC's jurisdiction over the dispute between the parties in the proceedings before the NYPSC, and the NYPSC expressly determined that it did, in fact, have jurisdiction to render a decision. (*See* Defendant's Br., Exh. B at 2–4). The Court has every reason to think that the courts of New York, who have not expressly stated their position on the rule of jurisdictional finality established in *Durfee*, would follow the holding of the United States Supreme Court in *Underwriters National* and the holdings of the various other Supreme Court and state court cases that have specifically addressed this issue.

The Court draws support for this proposition, as well, from the *Restatement (Second) of Judgments* § 12, wherein the modern rule which stresses finality of judgments is codified. It is the rule followed in most jurisdic-

tions and, although this Court can find no New York case which cites § 12 specifically, the courts of New York do follow the *Restatement (Second) of Judgments* generally. Furthermore, the principles underlying the modern rule codified in § 12 are the very same principles underlying the doctrines of *res judicata* and collateral estoppel as defined by the courts of that State. Section 12 reads as follows:

> When a court has rendered a judgment in a contested action, the judgment precludes the parties from litigating the question of the court's subject matter jurisdiction in subsequent litigation except if:
>
> (1) The subject matter of the action was so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority; or
>
> (2) Allowing the judgment to stand would substantially infringe the authority of another tribunal or agency of government; or
>
> (3) The judgment was rendered by a court lacking capability to make an adequately informed determination of a question concerning its own jurisdiction and as a matter of procedural fairness the party seeking to avoid the judgment should have opportunity belatedly to attack the court's subject matter jurisdiction.

*Restatement (Second) of Judgments* § 12 (1982). Having carefully considered the arguments set forth by the parties in their briefs and at oral argument, the Court determines that none of the three above-mentioned exceptions applies to the jurisdictional determination made by the NYPSC. Accordingly, plaintiff is precluded from relitigating the issue of the NYPSC's subject matter jurisdiction in this, the second proceeding between these parties.

In support of its position to the contrary, plaintiff cites, for example, *Salwen Paper Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* ·72 A.D.2d 385, 391, 424 N.Y.S.2d 918 (N.Y.App.Div.1980); and *Schwartz v. Public Adm'r of Bronx,* 24 N.Y.2d 65, 298 N.Y.S.2d 955, 960, 246 N.E.2d 725, 729 (N.Y.1969). Those cases are distinguishable from the case at bar, however, because in neither was the question of whether the first tribunal had jurisdiction to render its decision *actually litigated* in that forum. Here, of course, plaintiff availed itself of the opportunity it had to fully litigate the issue of the NYPSC's jurisdiction over the Agreement. Plaintiff also cites the *Ryan* decision, but the Court determines that *Ryan* actually supports defendant's position and, moreover, provides evidence that if confronted with the facts of the instant case, the New York Court of Appeals would follow *Durfee* and *Underwriters National,* holding that plaintiff should be barred by the doctrine of collateral estoppel from relitigating the issue of the NYPSC's jurisdiction over the Agreement.

The *Ryan* court unequivocally stated the fundamental principle that unless attacked for being fraudulent, a judgment would be rendered conclusive, *as to all questions litigated and decided,* among the parties thereto. 478 N.Y.S.2d at 826, 467 N.E.2d at 490. Further, the *Ryan* court went on to state as the rationale underlying its decision the very same reasons the *Durfee* court gave for making its determination:

> [I]t is for the interest of the community that a limit should be prescribed to litigation, and that the same cause of action ought not to be brought twice to a final determination. Justice requires that every cause be once fairly and impartially tried; but the public tranquility demands that, having been once so tried, all litigation of that question, and between those parties, should be closed forever.

*Ryan,* 478 N.Y.S.2d at 826, 467 N.E.2d at 490.

In *Durfee,* the Supreme Court, quoting an earlier decision, stated the reasons for the rule of jurisdictional finality as follows:

> "We see no reason why a court in the absence of an allegation of fraud in obtaining the judgment, should examine again the question whether the court making the earlier determination on an actual contest over jurisdiction between the parties, did have jurisdiction of the subject matter of the litigation.... It is just as important that there should be a place to end as that there should be a place to begin litigation. *After a party has his day in court, with*

*opportunity to present his evidence and his view of the law, a collateral attack upon the decision as to jurisdiction there rendered merely retries the issue previously determined. There is no reason to expect that the second decision will be more satisfactory than the first."*

*Durfee,* 375 U.S. at 113–14, 84 S.Ct. at 246 (quoting *Stoll,* 305 U.S. at 172, 59 S.Ct. at 138) (emphasis added). Plaintiff has already had the opportunity to litigate the issue of the NYPSC's jurisdiction over the Agreement, and it did, in fact, fully and fairly litigate that issue. For this Court to allow relitigation of the same issue would be to sanction exactly the type of judgment shopping the doctrine of collateral estoppel is meant to avoid.

 Based on the foregoing analysis, the Court also determines that plaintiff is collaterally estopped from relitigating the contract issues raised in the proceedings before the NYPSC. Plaintiff had a full and fair opportunity to litigate these issues, which issues were actually litigated and their outcome decisively determined by the NYPSC. Accordingly, the Court determines that plaintiff's First, Third and Fourth Causes of Action must be dismissed for the reason that under the closely-related doctrines of *res judicata* and collateral estoppel, plaintiff is barred from bringing these claims anew.

### D. Plaintiff's Second Cause of Action is also Dismissed

 Plaintiff's Second Cause of Action, which seeks relief for an alleged breach of the implied covenant of good faith and fair dealing that may be read into every contract is also dismissed. In New York, the doctrine of *res judicata* not only bars those claims that were actually litigated between two parties, but also those that could have been litigated and that arose out of the same transaction. *See International 800 Telecom,* 155 Misc.2d at 978, 591 N.Y.S.2d 313. Thus, although plaintiff did not raise its claim for

breach of the implied covenant of good faith and fair dealing before the NYPSC, that claim arose out of the same transaction as the other contract claims and could have been brought before the NYPSC. Because the same underlying facts form the basis for both the asserted (contract) and the unasserted (implied covenant) claims—namely, defendant's refusal to purchase energy generated by plaintiff's new equipment—plaintiff was obligated to raise *both* claims before the NYPSC. *See Reilly v. Reid,* 45 N.Y.2d 24, 407 N.Y.S.2d 645, 379 N.E.2d 172 (1978). Having failed to do so, plaintiff is barred from raising either of them for the first time here.

 Plaintiff's Second Cause of Action should also be dismissed on the ground that New York courts frequently dismiss claims for breach of the implied covenant of good faith and fair dealing where, as here, such claims are predicated upon the same conduct underlying a claim for breach of contract, which has been dismissed. In *Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.,* 767 F.Supp. 1269, 1281 (S.D.N.Y.1991), *aff'd in part, rev'd in part on other grounds,* 970 F.2d 1138 (2d Cir.1992), *aff'd,* 510 U.S. 86, 114 S.Ct. 517, 126 L.Ed.2d 524 (1993), the court held that a party to a contract cannot violate the covenant of good faith and fair dealing by exercising its rights under the contract. Here, the NYPSC determined that defendant did not breach the terms of the Agreement approved by the NYPSC in 1988 when it refused to purchase energy generated by plaintiff's new gas turbine. Having determined that plaintiff is precluded from relitigating the breach of contract issues raised before the NYPSC, the Court determines that its claim for breach of the covenant of good faith and fair dealing must be dismissed for the reason that it attacks the same conduct of defendant already found to be consistent with the terms of the Agreement.[6] In the case at bar, as a

---

6. Even the case cited by plaintiff as support for its position that a contract's implied terms may be breached even where its express terms are not recognizes that a covenant may be implied only where the implied term is consistent with other express terms in the contract. *Metropolitan Life*

*Ins. Co. v. RJR Nabisco, Inc.,* 716 F.Supp. 1504, 1517 (S.D.N.Y.1989). Accordingly, the Court may not read an implied covenant into the Agreement that is inconsistent with its express terms, which the NYPSC has already determined were not breached.

matter of law, defendant cannot be liable for breaching the implied covenant of good faith and fair dealing by exercising its rights under the Agreement. Accordingly, plaintiff's Second Cause of Action must be dismissed.

## II. Plaintiff's Cross–Motion for Partial Summary Judgment

Having dismissed the Complaint in its entirety, plaintiff's cross-motion for summary judgment is moot.

### CONCLUSION

For the foregoing reasons, the Court determines that plaintiff fails to state a legally cognizable claim for relief; accordingly, defendant's motion to dismiss the Complaint is hereby granted. The Complaint is dismissed in its entirety; therefore, plaintiff's cross-motion for summary judgment is also dismissed.

### ORDER

For the reasons set forth in the Court's Opinion filed herewith,

It is on this 30th day of June, 1997,

**ORDERED** that defendant's motion to dismiss the Complaint herein be and it hereby is granted, and plaintiff's Complaint is hereby dismissed, in its entirety, with prejudice; and it is further

**ORDERED** that plaintiff's cross-motion for partial summary judgment be and it hereby is dismissed as moot.