OPINION OF THE COURT
Chief Judge Wachtler.
In this contract action plaintiff, Allied Chemical, alleges that defendant, Niagara Mohawk Power Corporation (NIMO), has not fully paid for electricity it agreed to purchase from plaintiff. The dispositive issue in this dispute, however, unlike Staatsburg Water Co. v Staatsburg Fire Dist. (72 NY2d 147 [decided today]), was fully, fairly and conclusively litigated by these parties, at their request, in a quasi-judicial proceeding before the Public Service Commission (PSC), thereby precluding relitigation of the issue in this action.
The Public Utility Regulatory Policies Act of 1978 (PURPA) (16 USC § 2601 et seq.) and the regulations of the Federal Energy Regulatory Commission (see, 18 CFR 292.303, 292.304) require that regulated utilities purchase electricity from certain alternative generators of electricity known as "qualifying cogenerating facilities”. The rate paid by the utility for the electricity depends upon the date of commencement of construction of the cogenerating facility. Cogenerators for which construction commenced after November 9, 1978 are "new capacity” and receive payment at a rate at least equal to full avoided costs,* while facilities for which construction commenced before that date are "old capacity”, and the payment *275 rate may be less than full avoided costs, subject to the determination of the State regulatory authority (18 CFR 292.304 [b] [2]-[3]).
Allied Chemical owns an old capacity qualifying cogeneration facility located in Solvay, New York. In 1981 it entered into a contract with NIMO, a regulated utility, for the sale of electricity from the Solvay cogenerator at a rate less than full avoided costs. The contract provided, however, that "either party may elect to replace the price for energy as specified above with the applicable rate specified by the [PSC] either in a general tariff approved by the [PSC] or upon petition by either party to this Agreement.”
On May 12, 1982, the PSC issued opinion No. 82-10, requiring electric utilities, including NIMO, to file tariff leaves reflecting payment for cogenerated electricity at full avoided costs. NIMO then filed a new tariff, which became effective on February 20, 1984. On March 20, 1984, Allied Chemical advised NIMO that the new tariff was an "applicable rate” under the contract, and that Allied Chemical elected to receive this new rate for the sale of electricity from its Solvay cogenerator.
NIMO then filed a petition with the PSC, under section 204 of the State Administrative Procedure Act, seeking a declaratory ruling that the new tariff did not apply to old capacity cogenerators, and thus did not constitute an "applicable rate” under the contract. Allied Chemical responded by filing a counterpetition and complaint with the PSC, alleging that the tariff did cover old capacity cogenerators, and that as a result it could elect to receive full avoided costs for its sale of electricity to NIMO.
The PSC considered the parties’ claims in the context of its more general proceedings to implement PURPA; in a single proceeding the PSC considered not only the question of whether the new tariff constituted an "applicable rate” under the contract, but also, genetically, whether in the future old capacity generators should be entitled to receive payment at the full avoided costs rate. The PSC then issued two statements. The first, dated January 22, 1985, held that the new tariff did not include old capacity cogenerators, and thus Allied Chemical could not elect to receive the new tariff rate under the contract. In that ruling the PSC also suggested that a 10-year phase-in of a full avoided cost rate for old capacity cogenerators may be appropriate, and solicited comments on *276 the issue. On February 14, 1986, after receiving comments on the proposal, the PSC issued a second statement, formally adopting a 10-year phase-in of a full avoided cost rate for old capacity cogenerators.
Allied Chemical did not seek article 78 review of either PSC ruling. It did, however, commence the present contract action, seeking payment at the full avoided costs rate from March 20, 1984, the date of the alleged election under the contract, and February 14, 1986, the date on which the PSC allowed a phase-in of the full avoided costs rate. NIMO then moved to dismiss the complaint, primarily on res judicata grounds. Before deciding the motion, the trial court directed that the PSC be added as a party, and the PSC was served with a summons and amended complaint on July 30, 1986. The PSC then moved for summary judgment, on res judicata and Statute of Limitations grounds. The trial court granted the motions of NIMO and PSC, dismissing Allied Chemical’s complaint, and the Appellate Division affirmed. We now also affirm.
The elements necessary in all cases for issue preclusion are well known. It is required that an issue in the present proceeding be identical to that necessarily decided in a prior proceeding, and that in the prior proceeding the party against whom preclusion is sought was accorded a full and fair opportunity to contest the issue (Schwartz v Public Adm’r, 24 NY2d 65, 71; Ryan v New York Tel Co., 62 NY2d 494, 500-502). While issue preclusion may arise from the determinations of administrative agencies, in that context the doctrine is applied more flexibly, and additional factors must be considered by the court (cf., Staatsburg Water Co. v Staatsburg Fire Dist., 72 NY2d 147 [decided today], supra). These additional requirements are often summed up in the beguilingly simple prerequisite that the administrative decision be "quasi-judicial” in character (see, e.g., Ryan v New York Tel. Co., supra, at 500; Bernstein v Birch Wathen School, 71 AD2d 129, 132, affd 51 NY2d 932). However, the determination of whether an agency proceeding was "quasi-judicial” actually involves a multifaceted inquiry.
First, the court must make the threshold determination that the agency has the statutory authority to act adjudicatively. If the agency has such authority, the court must then ascertain whether the procedures used in the administrative proceeding assured that the information presented to the agency were sufficient both quantitatively and qualitatively, so *277 as to permit confidence that the facts asserted were adequately tested, and that the issue was fully aired (see, Brugman v City of New York, 64 NY2d 1011, 1012; Ryan v New York Tel. Co., supra, at 498; 4 Davis, Administrative Law § 21:3 [2d ed 1983]; Restatement [Second] of Judgments § 83). Additionally, the expectation of the parties is important in determining the fairness of applying issue preclusion in a particular case; thus, a party explicitly soliciting resolution of an issue from an agency, who fully participates in the administrative proceeding which follows with the expectation that all will be bound by the result reached there, may be fairly precluded from relitigating the issue in a subsequent proceeding (see, Staatsburg Water Co. v Staatsburg Fire Dist., supra). The court must look at the over-all context of the agency’s decision to assess whether according a preclusive effect to a particular agency determination is consistent with the agency’s scheme of administration; for example, the agency’s need for flexibility, and its need to modify prior determinations in order to adapt its policy to changing conditions, may counsel against applying issue preclusion to a particular administrative decision (see, Matter of Venes v Community School Bd., 43 NY2d 520, 525; Second Taxing Dist. v Federal Energy Regulatory Commn., 683 F2d 477, 484).
Applying these factors and considerations to the case now before us, we conclude that a preclusive effect is properly accorded to the PSC’s determination that the new tariff was not an "applicable rate” under the contract. First, there can be no doubt that it is within the PSC’s statutory mandate to act adjudicatively (see, Long Is. Light. Co. v Transamerica Delaval, 646 F Supp 1442).
In addition, there is no dispute that the issue before the PSC of whether the new tariff was an "applicable rate” is identical to the issue that Allied Chemical seeks to litigate in this action. Nor can there be any dispute that the PSC answered this precise question in the negative. Allied Chemical also does not contest that it had a full and fair opportunity to controvert this issue before the PSC, or suggest how procedurally the manner in which this issue would be resolved by a court would vary from the PSC’s determination, except for the different personages of the decisionmakers. Finally, Allied Chemical does not assert that giving preclusive effect to the PSC’s determination would be unfair, or was in any way unexpected; in fact, Allied Chemical, with full knowledge of PSC procedures, unequivocally requested and received a dis- *278 positive ruling from the PSC on the very issue it seeks to litigate here. Nevertheless, Allied Chemical does argue, relying upon Matter of Consumer Protection Bd. v Public Serv. Commn. (97 AD2d 320), that the PSC’s decision was a "rate-making”, and therefore "legislative” as opposed to "quasi-judicial” in nature, and that as a result the operation of issue preclusion here would be inconsistent with the PSC’s scheme of administration.
In Matter of Consumer Protection Bd. v Public Serv. Commn. (supra), the Appellate Division held that when the PSC determines an issue solely for the purpose of prospectively setting a utility’s rates, relitigation of the issue in a subsequent proceeding is proper because the PSC’s ratemaking decisions are "legislative”, as opposed to "quasi-judicial”, in character. A number of courts have reached a like conclusion (see, e.g., Second Taxing Dist. v Federal Energy Regulatory Commn., 683 F2d 477, 484, supra; Long Is. Light. Co. v Transamerica Delaval, 646 F Supp 1442, 1450-1451, supra; International Tel. & Tel. Corp. v American Tel. & Tel., 444 F Supp 1148, 1156-1157). The conclusion in these cases does not, however, appear to be based on the informality of the procedures used in a ratemaking proceeding; indeed, the PSC’s ratemaking proceedings often involve formal hearings, complete with the calling and cross-examination of witnesses, and other adjudicative-type procedural safeguards (see, e.g., Matter of National Fuel Gas Distrib. Corp. v Public Serv. Commn., 86 AD2d 901, 902; Matter of New York Tel. Co. v Public Serv. Commn., 59 AD2d 17, 19; see also, Public Service Law § 66 [12]). Instead, issue preclusion has not been applied to ratemaking proceedings because the reasonableness of a rate depends upon economic conditions, and numerous policy considerations, all of which invariably change over time, requiring that a utility’s rate be susceptible to reconsideration (Second Taxing Dist. v Federal Energy Regulatory Commn., supra, at 484). Because a ratemaking agency must be free to reassess the reasonableness of rates, it would be illogical, and inconsistent with the agency’s function, to give preclusive effect to a prior ratemaking determination, and courts have refused to do so (see, id.; Long Is. Light. Co. v Transamerica Delaval, supra; see also, Matter of Venes v Community School Bd., 43 NY2d 520, 525, supra).
According a preclusive effect to the disputed issue in this case, however, does not implicate these concerns. Here the PSC made a specific determination of whether a particular *279 tariff in fact applied to old capacity cogenerators, and thus was an "applicable rate” under the contract at issue. This was not a prospective ratemaking, or other type of policy decision that could be susceptible to reassessment in light of changing circumstances. On the contrary, it was a squarely defined controversy over the failure to pay fully under a contract for electricity delivered in the past, and called for a conclusive and final disposition. Therefore it would not be inconsistent with the PSC’s need for flexibility in making policy determinations to accord preclusive effect to the agency’s decision here. In the case before us, the parties voluntarily went to the PSC in order to obtain a dispositive ruling in this matter, that is what they received from the PSC, and that is the effect that the determination will be given by the court in this separate action.
Finally, it should also be noted that the lower courts properly declined to convert the present action into an article 78 proceeding to review the PSC’s determination, because this action was not commenced against the PSC within the four-month limitations period (see, CPLR 217).
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Judges Simons, Kaye, Alexander, Titone and Bellacosa concur; Judge Hancock, Jr., taking no part.
Order affirmed, with costs.

 "Avoided costs” is defined as "the incremental costs to an electric utility of electric energy or capacity or both which, but for the purchase from the qualifying facility or qualifying facilities, such utility would generate itself or purchase from another source” (18 CFR 292.101 [b] [6]).