OPINION OF THE COURT
Louis C. Benza, J.
Defendant, by motion No. M-42668, has moved for summary judgment dismissing this claim on the various grounds asserted as the first, second, third and fifth defenses in its answer. The claimant, by cross motion No. CM-42791, has cross-moved for summary judgment, for dismissal of the above-mentioned defenses, and for other relief. The claimant, by motion No. M-42010, had previously moved to vacate or modify the defendant’s demand for a verified bill of particulars. That motion was adjourned without date and will be addressed herewith.
The claim arises from the rehabilitation by claimant of the northbound South Grand Island Bridge pursuant to a contract entered into on December 20, 1984 between claimant and the New York State Thruway Authority (hereinafter Authority). The contract was approved by the State Comptroller on March 12, 1985. The contract contained a policy statement of the Authority concerning the need for minority businesses to participate in Authority contracts. The contract also specified the minority business enterprise requirements to be met by *270 the contractor in order to qualify for an Authority contract. It also required the contractor to use "good faith” efforts to attain the minority/women’s business enterprise (M/WBE) goals of the contract.
Prior to the contract’s approval by the Comptroller, claimant submitted to the Authority documentation of its efforts in achieving the minority participation required by the contract.
This project proceeded rapidly, and claimant, pursuant to the contract, received a $500,000 early-completion bonus. During the course of the work, the Authority became aware of possible noncompliance by claimant with the M/WBE provisions of the contract. By letter dated October 15, 1985 the Authority notified claimant of this situation. It also advised claimant that it was withholding future estimates until claimant complied with the affirmative action provisions of the contract and that an investigation of claimant’s noncompliance was in progress. The Authority’s investigation concluded with a finding that claimant failed to maintain good-faith efforts to meet the affirmative action requirements of the contract concerning its minority subcontracts, and also that claimant did not comply with the minority representation requirements for women trainees. By letter dated December 27, 1985 the Authority’s Director of Affirmative Action notified claimant of this determination and afforded claimant the opportunity for a meeting in the form of a conciliation conference. The conference was held on January 7, 1986, and claimant appeared by Michael Elia, its vice-president. As a result of the meeting, the Authority found that claimant breached its contract by not exercising good faith in its subcontracting of the work to minority firms. By letter dated April 16, 1986 the Authority notified claimant of its determination and that it had recommended that the sum of $88,372.45 be deducted from the contract price to reflect the lost value of M/WBE subcontractor work on the project.
The defendant asserts that the claim should be dismissed as it fails to state a cause of action; that claimant’s only remedy is by seeking judicial review of the Authority’s decision pursuant to a CPLR article 78 proceeding, but that such review is now barred by the applicable Statute of Limitations. The defendant also asserts that the claim is barred by res judicata based upon the determination of the Authority, and that the court lacks subject matter jurisdiction over the claim.
The court finds and concludes that claimant has stated a *271 cause of action. Claimant alleges that a contract existed between the parties; that claimant completed its obligations under the contract, and that the defendant breached the contract by failing to pay claimant $88,372.45 due and owing to it under the contract. Upon a review of the pleadings and all the papers before the court, and after hearing oral argument on the motions, the determinative issue to be decided is whether the Authority had the contractual right to deduct money from claimant’s final payment as a charge for breaching the minority participation provisions of the contract.
Attached to the defendant’s motion papers are pages 199 through 207 of the contract, which contain State and some Federal requirements applicable thereto. On page 204, under the heading "Procedure”, the contract provides:
"A contractor’s failure to attain both the MBE and WBE goal, or to satisfactorily document their 'good faith efforts’* and failure to attain same can result in forfeiture of the amount of the deposit pursuant to Section 103-02 of the Standard Specifications * * *. In cases of a contractor’s failure to fulfill the requirements of this provision, the Department reserves the right to award the contract pursuant to Section 103-01 of the Standard Specifications.
" * Good faith efforts as operationally defined and interpreted by NYS DOT as provided in Form AAP-10.”
Further, on page 207, in paragraph 8, under that portion of the contract dealing with "Requirements, Terms and Conditions of Minority Business Enterprise Program”, the contract provides:
"Where the Director, T.A.A.P.O. [Transportation Affirmative Action Program Office] finds that the contractor has failed to comply with the requirements of this Minority Business Enterprise Program, said officer will immediately notify the contractor to take corrective action.
"Where the contractor has been found to have failed to exert every good faith effort * * * to involve minority business enterprise in the work provided, the [Authority] may declare that the contract is terminated by reason of the contractor’s default, and/or may declare that the contractor is ineligible to receive further [Authority] funds, whether as a contractor, subcontractor, or as a consultant, for a period of up to three years.”
Based upon these two above-quoted provisions of the con *272 tract, the court finds and concludes that the Authority had four options if it was found that claimant had failed to comply with the affirmative action provisions of the contract:
1. declare claimant had forfeited its bid deposit;
2. award the contract to another contractor;
3. declare the contract be terminated by reason of the default; and/or
4. declare the contractor ineligible to receive further Authority funds for a period of three years.
Attached to claimant’s cross motion, as exhibit A, is the agreement entered into between claimant and the Authority. Article 8 of the agreement provides that the Authority can withhold payment if a proper and lawful direction given by the Authority concerning the work or material supplied by the contractor is not complied with. The court finds and concludes that the affirmative action provision of the contract has no relation to the work or material supplied by the contractor. Article 8 is the only provision of the contract under which the Authority is authorized to withhold money from claimant. The Authority did not choose any of the four options available under that portion of the contract dealing with "Procedure” and "Requirements, Terms and Conditions of Minority Business Enterprise Program”; instead, it chose to deduct $88,372.45 which, it claims, is the lost value of M/WBE subcontractor work on the project. The court finds as a matter of law that the Authority had no contractual right to deduct that sum from the amount due and owing to claimant, and that by doing so, the Authority breached its contract with the claimant.
As stated in Restatement (Second) of Contracts § 352, damages are not recoverable "for loss beyond an amount that the evidence permits to be established with reasonable certainty.”
The Authority has failed to establish that a dollar value was contemplated to be paid under the terms and conditions of the contract for any breach by the contractor of the minority subcontractor’s participation provisions. The public policy of the Authority in attempting to increase minority involvement in public construction work is laudable; however, when put to the pragmatic test involving principles of contract damages, the damages here are not ascertainable under any recognized method. The Authority has not been monetarily damaged and has not suffered a financial loss. The defendant having incorporated into the contract the remedies for relief in the event *273 of breach of the contract by claimant as to M/WBE participation, and having failed to exercise these remedies, cannot now complain of denial of relief for alleged breach of said covenant when existing law prevents recovery under established principles of contract law.
It is apparent the remedies included in the contract for said breach were based on knowledge that money damages were not available in the event of a breach. An analogy could be made with the usual insertion into public improvement contracts of specific dollar amounts for damages based on a contractor’s failure to timely complete the contract, the difference, of course, being that damages resulting from delay in completing the work are ascertainable. However, because of the difficulty in establishing these damages, specific liquidated damages amounts have been approved by the courts as not constituting a penalty. Such a remedy, of course, was not available here because damages herein are nonexistent. The only ones who might have suffered a loss in the instant claim are minority contractors, and they are without recourse for lack of privity of contract. Certainly, the defendant is not contending that any minority contractor, sought to be aided by this provision of the contract, could sue the Authority for damages resulting from claimant’s failure to comply with the minority participation requirements of the contract.
In the absence of any authority under the contract allowing the defendant to withhold funds, the withholding of such funds constituted a defendant-imposed penalty upon which the law frowns (see, Cohen, Public Construction Contracts and the Law § 8.2, at 228).
We now turn to the defendant’s other grounds for seeking dismissal. We find that the claim is not barred by res judicata based upon the determination of the Authority. The Court of Appeals has held that while collateral estoppel, which is a form of res judicata, may arise from the determinations of administrative agencies, the administrative decision must be quasi-judicial in character (see, Allied Chem. v Niagara Mohawk Power Corp., 72 NY2d 271).
The court, in Allied (supra), held that determining whether an agency proceeding is quasi-judicial is a multifaceted inquiry. The court must first make the threshold determination that the agency has the statutory authority to act adjudicatively. Pursuant to 41 CFR 60-1.26 (a) (1) (iv), regulations of the Office of Federal Contract Compliance Programs, which *274 are incorporated into the contract, the Authority has the statutory ability to act adjudicatively. However, the mere holding of a conciliation conference was not in conformity with the contract or the regulations. The Authority failed to take the necessary steps to give the proceeding, which led to the decision, the cloak of res judicata. Moreover, the proceeding did not comply with the other tests set forth in Allied Chem. v Niagara Mohawk Power Corp. (supra).
Once it is determined that the agency has such authority, the court must ascertain whether the procedures used in the administrative proceeding assure that the information presented to the agency is sufficient, both quantitatively and qualitatively, so as to "permit confidence that the facts asserted were adequately tested, and that the issue was fully aired” (Allied Chem. v Niagara Mohawk Power Corp., supra, at 277, citing Brugman v City of New York, 64 NY2d 1011, 1012, and Ryan v New York Tel. Co., 62 NY2d 494, 498).
In the instant situation, we find and conclude that the conciliation meeting of January 7, 1986 was not a formal hearing and was not quasi-judicial, and thus did not meet the second plateau of the test set by Allied. There was no calling and cross-examination of witnesses or other adjudicative-type safeguards (Allied Chem. v Niagara Mohawk Power Corp., 72 NY2d 271, supra; Matter of National Fuel Gas Distrib. Corp. v Public Serv. Commn., 86 AD2d 901). The claimant was not represented by counsel and appeared through its vice-president and assistant vice-president. Claimant was not advised that it could be represented by legal counsel or that it could call witnesses. No witness testified under oath. We find that the conciliation meeting did not "permit confidence that the facts asserted were adequately tested, and that the issue was fully aired” (see, Allied Chem. v Niagara Mohawk Power Corp., supra, at 277).
As we have found that claimant has stated a cause of action for breach of contract, the court finds that the defendant’s argument of claimant’s only remedy being by way of a CPLR article 78 proceeding in Supreme Court is without merit. The Court of Claims has exclusive jurisdiction to hear and determine contract actions against the Authority (Public Authorities Law § 361-b), and thus, the court has subject matter jurisdiction over this claim.
The Authority has also raised the issue that the claim was not timely filed pursuant to the Court of Claims Act. The *275 Authority argues that the claim accrued in 1986 when claimant was informed that as a result of the conciliation conference, a deduction was to be made from claimant’s contract amount. The general rule in public construction contract cases is that the claim accrues when final payment is issued (see, Mergentime Corp. v State of New York, 152 AD2d 659; Forest-Fehlhaber v State of New York, 74 AD2d 272). The court finds and concludes that the general rule should apply here as there has been no reasoning or logic offered by the Authority to hold otherwise. We find that the claim accrued when final payment was issued to claimant, and thus the claim was timely filed in accordance with the Court of Claims Act.
To obtain summary judgment, it is necessary for claimant to establish its cause of action "sufficiently to warrant the court as a matter of law in directing judgment” in its favor (CPLR 3212 [b]). We find and conclude that claimant has done so. There is no dispute that the money withheld was due claimant pursuant to the contract. The withholding of this money by the Authority was unauthorized, as found by the court; therefore, no issue of fact remains to be determined.
Therefore, based on the foregoing, defendant’s motion (M-42668) for summary judgment dismissing the claim is denied, and claimant’s cross motion (CM-42791) for summary judgment is granted. The clerk of the court is directed to enter judgment in favor of claimant in the amount of $88,372.45, plus appropriate interest from November 29, 1989, the date claimant received its final payment. In view of the foregoing, claimant’s previous motion (M-42010) to vacate or modify defendant’s demand for a verified bill of particulars has been rendered moot.