91 N.Y.2d 1 (1997)
689 N.E.2d 864
666 N.Y.S.2d 970
Abiele Contracting, Inc., Appellant,
v.
New York City School Construction Authority, Respondent. (And a Related Action.)
Court of Appeals of the State of New York.
Argued September 9, 1997
Decided October 28, 1997.
Alvy, Tablante & Agovino, L. L. P., Great Neck (Peter L. Agovino and Norman D. Alvy of counsel), and Meyer, Suozzi, English & Klein, P. C., Mineola (Bernard S. Meyer of counsel), for appellant.
Paul A. Crotty, Corporation Counsel of New York City (Alan G. Krams, Kristin M. Helmers and Marilyn M. Schechter of counsel), for respondent.
Hart & Hume, L. L. P., New York City (Henry James Wallach of counsel), for Surety Association of America, amicus curiae.
Chief Judge KAYE and Judges TITONE, BELLACOSA, LEVINE, CIPARICK and WESLEY concur.
*5 SMITH, J.
The primary issue presented on this appeal is whether a municipal agency's determination of default and subsequent termination of contract with its general contractor was reviewable only in a CPLR article 78 proceeding, and therefore not subject to a plenary action instituted by the general contractor. We hold that since the municipal agency had neither statutory *6 nor contractual authority to render a quasi-judicial determination, it was not empowered to issue a final and binding determination of default reviewable only in an article 78 proceeding. Thus, a plenary action sounding in contract is not precluded under the circumstances presented here.

I.
On May 17, 1990, plaintiff Abiele Contracting, Inc., was awarded a contract by defendant, the New York City School Construction Authority (the SCA), to renovate and modernize the facilities at Samuel J. Tilden High School in Brooklyn for approximately $16.4 million. Abiele commenced performance under the contract soon thereafter. Over the course of two years, the renovation of Tilden High School was plagued with complications including staff turnover, multiple site and design conflicts, and numerous changes in scheduling and in the scope of work. The SCA attributed these problems to Abiele's lack of planning, failure to follow instructions and inadequate staffing. Abiele, in response, traced the problems to the SCA's lethargic response to expressed concerns and its failure to grant Abiele access to certain work areas. Not surprisingly, conflicts arose between the parties over costs and payments.
In November 1992, the SCA proposed that the construction contract be closed out "on consent" and offered to pay Abiele $2 million to achieve that end. Abiele rejected the offer on the ground that it was owed more than $5 million for unpaid work and materials. The parties met in early January 1993 to continue negotiations and to review the status of Abiele's performance. When negotiations failed, the SCA's Chief Project Officer directed Abiele, by letter dated January 14, 1993, to cease all work at the site pending a scheduled meeting of the SCA's Default Committee.[1] The letter asserted 11 proposed grounds for termination and stated that the Committee would convene to consider whether Abiele should be terminated for cause pursuant to article 9 of the contract and whether it would be barred from bidding, contracting and subcontracting on future contracts with the SCA. Abiele was advised that it could attend the meeting, with counsel, to present its position.
*7 The Default Committee and Abiele met on January 29, February 11, 18, and 19, 1993. During those sessions, Abiele contested virtually all of the SCA's allegations of its substandard performance. Both parties submitted numerous memoranda and exhibits in support of their respective positions and both parties called several witnesses. No transcript or record of the proceedings exists. On April 23, 1993, Abiele was notified that its contract with the SCA had been terminated for cause and it would be barred from bidding, contracting or subcontracting on any SCA contracts for three years. The written decision enumerated the grounds for termination while also finding some claims against Abiele to be unsubstantiated. Abiele appealed its termination and debarment to the president of the SCA, but on June 10, 1993, Abiele's appeal was denied.
On October 22, 1993, Abiele commenced a plenary action against the SCA seeking money damages for breach of the contract. In moving for summary judgment, the SCA argued that since plaintiffs had failed to challenge the administrative finding of default in an article 78 proceeding, they were bound by that determination and could not attempt a collateral attack upon the default determination by instituting a plenary action. Supreme Court granted SCA's motion for summary judgment. The court concluded that an article 78 proceeding was the appropriate mechanism by which to contest the SCA's default determination and a failure to do so "precludes a plenary action for damages and has res judicata effect."
The Appellate Division affirmed and held that the initiation of an article 78 proceeding was a prerequisite to recovery. The Court also reasoned that since the plenary action was "framed * * * in terms of wrongful termination of contract" it was nothing more than a collateral attack on the Default Committee's finding, and was therefore barred (232 AD2d 440, 441). This Court granted leave to appeal.

II.
We have recognized that "there are circumstances in which the same governmental action may constitute a violation of contract and also be of a character that would support a claim for article 78 relief" (Matter of Goodstein Constr. Corp. v Gliedman, 117 AD2d 170, 176 [Sandler, J. P., concurring]), affd 69 N.Y.2d 930). However, the issues presented in a contract action differ significantly from those presented in an article 78 proceeding. When the damage allegedly sustained arises from *8 a breach of the contract by a public official or governmental body, then the claim must be resolved through the application of traditional rules of contract law. On the other hand, when a petitioner asserts that the determination of a governmental body or public official is "in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion" and seeks nullification of same, then an article 78 proceeding is the appropriate vehicle through which the claim may be addressed (CPLR 7803).
Thus, where the language of the complaint asserts violations of a plaintiff's rights under a contract and the primary thrust of the allegations is in contract, a plenary action sounding in contract is the appropriate remedy. Stated differently, where the focus of the controversy is on an agency's breach of an express contractual right, or on the agency's violation of the implied obligations of good faith, fair dealing and cooperation, a contract action is the recommended remedy.
Abiele's complaint contains allegations of a breach of an express contractual term requiring notice and an opportunity to cure as well as allegations of conduct on the part of the SCA which sufficiently raise the spectre that the agency violated its obligation to act in good faith.[2] Whether or not Abiele ultimately prevails on its claims, clearly the nature of the allegations here indicates that a plenary action sounding in contract is the appropriate remedy.

III.
A municipal agency's finding that a general contractor has defaulted on its performance under the contract will not bind the general contractor, and foreclose a plenary action, unless the agency is endowed with contractual or statutory authority to render a quasi-judicial, final and binding determination. While defendant correctly notes that judicial review of administrative actions is generally achieved through an article 78 proceeding, the administrative action must, as a prerequisite, be authorized (see, Matter of Foy v Schechter, 1 N.Y.2d 604, 612; *9 Allied Chem. v Niagara Mohawk Power Corp., 72 N.Y.2d 271, 276, cert denied 488 US 1005). We conclude that the SCA had neither statutory nor contractual authority to render a binding administrative determination in this case and, thus, Abiele was not precluded from challenging the default finding in a contract action.
The SCA relies primarily on terms within the written agreement between the parties which, it claims, granted it the requisite authority to render a final and binding determination. Specifically, the SCA points to section 9.01 of the standard form construction contract, entitled "Termination for Cause," as the source of its power. This provision states, in relevant part, that if
"a substantial violation of a material provision hereunder shall have occurred due to the fault of the Contractor and the Contractor shall fail to cure such default within ten (10) days after receipt of Notice from [the SCA] specifying the nature of such default * * * then [the SCA] may, in addition to all other rights [the SCA] may have as provided by law, terminate the Contract by giving not less than ten (10) days' Notice of termination to the Contractor, whereupon the Contract shall be deemed terminated at the end of such Notice period."[3]
Unless statutory language or public policy dictates otherwise, the terms of a written agreement define the rights and obligations of the parties to the agreement (see, Westinghouse Elec. Corp. v New York City Tr. Auth., 82 N.Y.2d 47, 55). We have long held that the fundamental objective when interpreting a written contract is to determine the intention of the parties as derived from the language employed in the contract (see, Morlee Sales Corp. v Manufacturers Trust Co., 9 N.Y.2d 16, 19). Similarly, where the parties have agreed to conduct themselves in accordance with the rights and duties expressed in a contract, a court should strive to give a fair and reasonable *10 meaning to the language used (Aron v Gillman, 309 N.Y. 157, 163; Sutton v East Riv. Sav. Bank, 55 N.Y.2d 550, 555).
The above-quoted contractual provision is an unambiguous statement of the SCA's right to terminate the contract, its obligation to allow the contractor an opportunity to cure once it has concluded that provisions of said contract were breached, and its right to contract with another, at the breaching party's expense, to continue the work. It is a simple default provision. There is no evidence that by agreeing to the language of this provision, Abiele unequivocally declared its intention to surrender substantive or procedural rights to seek redress in a plenary action (see, e.g., Crimmins Contr. Co. v City of New York, 74 N.Y.2d 166, 171; Naclerio Contr. Co. v City of New York, 116 AD2d 463, affd for reasons stated below 69 N.Y.2d 794).
This conclusion is supported by reference to other provisions of the contract (Rentways, Inc. v O'Neill Milk & Cream Co., 308 N.Y. 342, 347 [contract provision or clause must be read in the context of the entire contract]). Specifically, in section 19.11, "Waiver of Remedies," the parties agreed that "the Contractor hereby waives any and all rights and remedies to which the Contractor might otherwise be or become entitled to because of any wrongful act or omission of the [SCA] saving only the Contractor's right to money damages." Thus, the contract itself contemplated Abiele's right to seek money damages. The SCA's assertion that the contract limits Abiele to money damages in a special proceeding is unpersuasive.

IV.
The SCA also argues that since the Public Authorities Law, and a related regulation, granted it the power to disqualify firms from bidding on SCA contracts, the SCA also had the requisite adjudicatory authority to make binding determinations regarding Abiele's contract performance. The SCA's reliance on the statute and regulation is misplaced.
As a general rule, "the jurisdiction of an administrative board or agency consists of the powers granted it by statute, [and thus] a determination is void * * * where it is made either without statutory power or in excess thereof" (Matter of Foy v Schechter, supra, at 612). As a "creature of statute" (see, Public Authorities Law § 1727 et seq.), the SCA "lacks powers not granted to it by express or necessarily implicated legislative delegation" (Matter of Flynn v State Ethics Commn., 87 N.Y.2d 199, 202).
*11 The provisions of the Public Authorities Law cited by the SCA do not expressly or impliedly grant the necessary authority to render quasi-judicial determinations. Section 1734 of the statute establishes internal procedures for the making and administration of contracts by the SCA (see, Public Authorities Law § 1734 [1] [a]), and section 1728 articulates the powers and duties of the SCA including the power to "make and execute contracts" (Public Authorities Law § 1728 [7]). The agency may also "do any and all things necessary or convenient to carry out and exercise the powers given and granted by this section" (Public Authorities Law § 1728 [17]). Yet, the narrow grant of power "to make and execute" contracts and the general exhortation to do all that is necessary or convenient does not create authority to finally determine legal issues arising under the contract and to bind the contracting agency. Any other interpretation is unsupported by the plain meaning of the statute. Moreover, this interpretation is in accord with the terms of the contract which, as we have previously stated herein, clearly evince the intent of the parties to allow a claim for money damages.
Similarly, the regulation cited by the SCA offers no support for the agency assertion of authority (see, 21 NYCRR 9604.1). It merely establishes an internal process to be followed before a contract may be terminated for cause. Moreover, the SCA cannot confer upon itself, through the promulgation of a regulation, authority to render quasi-judicial and binding determinations (see, Matter of Tze Chun Liao v New York State Banking Dept., 74 N.Y.2d 505, 510 ["(a)n agency cannot create rules, through its own interstitial declaration, that were not contemplated or authorized by the Legislature and thus, in effect, empower themselves to rewrite or add substantially to the administrative charter"]). Therefore, since we have concluded that the regulation's enabling statute, Public Authorities Law § 1728, does not address or envision the exercise of adjudicatory powers by the agency, the SCA cannot point to the regulation as the source of such power.

V.
The SCA next urges this Court to find that Abiele is precluded, on the theory of collateral estoppel, from commencing a plenary action, even where defendant's actions were not authorized by statute or contract, because Abiele fully participated in a "detailed and vigorously contested hearing" of its alleged breach where it presented evidence, asserted *12 legal arguments, and had a fair opportunity to rebut contrary assertions.
While issue preclusion may arise from the determinations of administrative agencies these administrative decisions must be "`quasi-judicial' in character" (Allied Chem. v Niagara Mohawk Power Corp., 72 N.Y.2d 271, 276, cert denied 488 US 1005, supra). To ascertain whether an agency's proceeding was "quasi-judicial," a court must engage in a multifaceted inquiry, beginning with "the threshold determination that the agency has the statutory authority to act adjudicatively" (id.; Ryan v New York Tel. Co., 62 N.Y.2d 494, 499). As previously discussed herein, the SCA was not granted authority to render a final, binding and quasi-judicial determination of default. Thus, the SCA's contention does not survive even this threshold inquiry.
In sum, we conclude that the SCA was not authorized to render a final and binding determination of default against Abiele that was subject to review only under article 78. The contract action instituted by Abiele may proceed. The plenary action was instituted within the six months' limitation period provided in the contract and therefore is not time-barred.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the case remitted to the Appellate Division for consideration of issues raised but not determined on the appeal to that Court.
Order reversed, with costs, and case remitted to the Appellate Division, Second Department, for further proceedings in accordance with the opinion herein.
NOTES
[1] The construction contract is silent on the subject of the Default Committee. The relevant contractual provision, section 9.01, which outlines a process for termination for cause, makes no mention of such a committee. Instead, the Default Committee was established by regulations intending to provide "the means and methods of terminating for cause poor or nonperforming contractors" (see, 21 NYCRR 9604.2 [e], [f] [amended 1995]).
[2] Specifically, the first, second, third, eighth and ninth causes of action allege that Abiele was owed the balance of the contract price as well as a significant amount of moneys due for extra and additional work approved by the SCA and already expended. The fourth cause of action alleges that the SCA improperly and arbitrarily terminated the contract and also violated same by failing to follow specific provisions therein. In its fifth and sixth causes of action, Abiele enumerates a number of acts allegedly taken by the SCA to frustrate, impede or interfere with the performance of the contract.
[3] This provision of the contract further provides that "[i]n the event the [SCA] determines that there has been a material breach by the Contractor of any of the terms of the Contract and such breach remains uncured for thirty (30) days after service on the Contractor of Notice thereof, the [SCA], in addition to any other right or remedy it might have, may terminate this Contract and the [SCA] shall have the right, power and authority to complete the services provided for in this Contract, or contract for their completion, and any additional expense or cost of such completion shall be charged to and paid by the Contractor."