Gulf LNG Energy, LLC v Eni S.p.A. (2024 NY Slip Op 04517)

Gulf LNG Energy, LLC v Eni S.p.A.

2024 NY Slip Op 04517

Decided on September 24, 2024

Appellate Division, First Department

Oing, J., 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: September 24, 2024
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Jeffrey K. Oing
Peter H. Moulton Manuel Mendez Martin Shulman Bahaati E. Pitt-Burke

Index No. 654819/18, 653520/20 Appeal No. 2101-02 Case No. 2023-04872, 2023-04874 

[*1]Gulf LNG Energy, LLC et al., Respondents,
v
Eni S.p.A., Appellant.
Eni S.p.A., Appellant,
v
Gulf LNG Energy (Port), LLC, Respondent.

Defendant Eni S.p.A appeals from the judgments of the Supreme Court, New York County (Jennifer G. Schecter, J.), entered September 14 and 15, 2023, bringing up for review orders, entered June 14, 2023, which granted plaintiffs Gulf LNG Energy, LLC and Gulf LNG Pipeline, LLC's motion for summary judgment dismissing defendant Eni S.p.A.'s breach of contract counterclaims, and granted defendant Gulf LNG Energy (Port) LLC's motion for summary judgment dismissing plaintiff Eni S.p.A.'s breach of contract cause of action.

Sheppard, Mullin, Richter & Hampton LLP, New York (Helene Gogadze of counsel), for appellant.
Debevoise & Plimpton LLP, New York (Mark W. Friedman, William H. Taft V. and Lisa Wang Lachowicz of counsel), for respondents

Oing, J., 

This appeal asks us to determine the scope of the preclusive effect of the underlying arbitration award on breach of contract claims asserted and contested in that proceeding, but never decided because the tribunal declared that one party's performance was excused under the doctrine of frustration of purpose. We hold that the breach of contract claims in the underlying actions are precluded under the doctrine of res judicata. Our conclusion is a reminder to practitioners in the arbitral or judicial forum of the oft-uttered Greek adage, leave no stone unturned, particularly where interconnected agreements are at play putting at stake millions of dollars.
The transactions underlying the dispute arose out of investments in the liquified natural gas (LNG) industry — specifically, the commoditization of Angola-sourced LNG. When LNG produced by a plant in Angola needed a market to receive and regasify its product, the Angola state-owned entity selected the U.S. as the market. Gulf LNG Energy, LLC (GLE), and Gulf LNG Pipeline, LLC (GLP, together with GLE, Gulf) were selected to build and operate an LNG import and regasification terminal and a distribution pipeline on the Gulf Coast in Pascagoula, Mississippi.
In December 2007, Gulf and Eni USA Gas Marketing, LLC (Eni USA), a company established for the purpose of marketing natural gas products and performing related services in the U.S., entered into a Terminal Use Agreement (TUA) with a 20-year term. Pursuant to the TUA, GLE agreed to site, construct, and operate an LNG receiving import terminal facility (Facility) capable of unloading, receiving, and storing LNG, as well as the regasification and delivery of LNG to the applicable delivery point. Delivery would be accomplished through the construction and operation of a five-mile-long pipeline designed to transport regasified LNG from the Facility to downstream interstate pipelines. Under article 22 of the TUA, Gulf made the representation and warranty that it would limit its "purpose and object to the ownership, design, financing, construction, equipping, testing, commissioning, operation, maintenance, repair, decommissioning and removal of the [Facility]." The TUA mandated arbitration of disputes. In exchange[*2], Eni USA would deliver the LNG to the Facility and make fixed monthly payments for the import and regasification services provided by Gulf, whether or not Eni USA imported LNG to the Facility.
Eni S.p.A., a corporation that indirectly holds 100% ownership interest in Eni USA, engages in oil and gas exploration, field development and production, as well as the supply, trading, and shipping of natural gas and LNG. It guaranteed 100% Eni USA's payment obligations under the TUA (Guaranty). Gulf's parent, Gulf LNG Energy Port (Gulf Port), in turn, extended certain TUA representations to Eni S.p.A. and Eni USA pursuant to a Parent Direct Agreement (PDA). Specifically, as is relevant to this appeal, Gulf Port warranted under the PDA that it would "cause GLE to comply with the provisions of Article 22.3 and Article 22.4 of the Terminal Use Agreement." Gulf extended the same TUA representations to Eni S.p.A. pursuant to a Direct Agreement (DA) — that Gulf warranted that the "representations, warranties and covenants of GLE and GLP set forth in article 22 of the Terminal Use Agreement are hereby incorporated by reference into this Agreement as if such representations, warranties and covenants were set forth in full herein and shall be deemed to have been made directly to Guarantor hereunder." Unlike the TUA, the PDA and the DA did not contain mandatory arbitration provisions, and did not have a limitation on damages. Both the PDA and the DA were executed on December 10, 2007, two days after the TUA was executed, and formed a suite of contracts for the transaction contemplated by the TUA.
Prior to the completion of the Facility, a sea change, now known as the shale gas revolution, was taking place in the imported LNG market in the U.S. Due to a convergence of various factors, including the improvement in shale gas technology, the U.S. domestic appetite for imported LNG decreased substantially. In October 2011, Gulf completed the construction of the Facility. In 2012, in response to a decrease in the demand for imported LNG, which was the sole purpose for which the Facility was built, Gulf began to explore the addition of liquefaction and export capabilities from the Facility. According to Gulf, it presented its plan to its TUA customers, which included Eni USA, explaining that there would be no interference with existing services. Gulf also believed that if feasible, the plan to render the Facility capable of liquefaction and export, instead of import, would relieve the TUA customers of the burden of making fixed monthly payments under the TUA for a facility whose services they had yet to use, and might never use, during the 20-year term of the contract. In fact, after completion of the Facility, Eni USA elected not to ship its LNG to the Facility, opting instead to send it to other more lucrative foreign markets. A formal agreement between Gulf and its TUA customers regarding Gulf's proposal was never reached.
In March 2016, Eni USA commenced an arbitration [*3]proceeding against Gulf pursuant to the TUA seeking to terminate the TUA, ending its contractual obligations to Gulf. Eni USA advanced two arguments — that the TUA was terminated due to frustration of purpose and that Eni USA could terminate the TUA because of Gulf's breaches of that agreement. As to the breach of contract claims, Eni USA alleged in its notice of arbitration that Gulf breached articles 22.4(a) and 22.4(e) of the TUA by pursuing a gas liquefaction and export project in contravention of the terms of the TUA, which, among other things, limited the purpose of the Facility and Gulf to the importation and regasification of LNG.
In response, Gulf argued that the breach of contract claims failed because it did not act outside its corporate purpose, and it did not make modifications to the Facility. Gulf also argued that should the tribunal find that the TUA was terminated due to frustration of purpose, then Gulf was entitled to compensation, on an equitable basis, for the early termination of the TUA. In particular, Gulf maintained it was entitled to compensation for the value of the performance tendered under the TUA and the value of the consideration promised by Eni USA under the TUA.
Both parties submitted initial briefs, reply briefs and post-hearing briefs, as well as evidence and expert testimony. The tribunal conducted a hearing over the course of four days.
In June 2018, two years after the arbitration was lodged, the tribunal issued a 100-page comprehensive final award wherein it determined that the TUA was terminated due to frustration of purpose as of March 1, 2016, finding that the unanticipated turn of events of the shale gas revolution rendered the Facility's original purpose essentially unattainable. Although that declaration relieved Eni USA of $1.2 billion in prospective payments under the TUA, the tribunal, noting the TUA's purpose pursuant to article 22, determined that Eni USA owed equitable compensation damages to Gulf of more than $462 million in connection with the early termination of the TUA. These damages were to compensate Gulf for the decommissioning of the Facility and for Gulf's partial performance under the TUA, a value that "is not fully accounted for by Eni's proportionate share of the decommissioning costs." The tribunal concluded that "[c]onsidering [its] finding on the frustration of TUA's purpose, the question as to whether [Gulf has] breached the warranties and covenants, including those set forth at Articles 22.4(a) and 22.4(e) of the TUA, has become academic and deserves no further consideration."
Shortly after the award was rendered, the tribunal resolved Eni USA's application to correct the award under the extant arbitration rules. Although permitted to do so, Eni USA did not seek to have the tribunal consider and determine its TUA contract breach claims or its entitlement to a setoff to Gulf's substantial damage award. The tribunal corrected the award to clarify that Gulf's entitlement to retain [*4]the TUA payments ended on December 31, 2016 and to direct Gulf to refund payments after that date, noting that "[i]n all other respects, the Award is reaffirmed."
Gulf and Eni USA separately sought confirmation of the award in the Delaware Chancery Court. Notably, Eni USA did not petition the Chancery Court to vacate the award on the ground that "a mutual, final, and definite award upon the subject matter submitted was not made" (9 USC § 10[a][4]). Instead, Eni USA stated to the Chancery Court that "[n]either party has raised any grounds for challenging the confirmation of the Final Award, and none exists." The Chancery Court confirmed the award, entering a final consent judgment of $371,577,849 in Gulf's favor. Eni USA paid the award on February 20, 2019.
Four months later, Eni USA commenced a second arbitration seeking to pursue the breach of contract claims it asserted in the first arbitration. In the notice of arbitration, Eni USA described its damages as including "the amounts that Eni has had to pay Gulf" pursuant to the award. Gulf sought to enjoin the second arbitration before the Delaware state courts. Ultimately, the Delaware Supreme Court enjoined the second arbitration on the ground that it was an impermissible collateral attack of the first arbitration and the resulting award:
"Eni also notes that it sought to recover damages and not just the restitution it was required to pay under the Final Award. While Eni characterized its request for relief in the Second Arbitration as damages, it elevates pleading over substance. Eni sought to recoup as damages the amount it paid in restitution. And the First Tribunal already considered whether 'deductions should be applied' to reduce the restitution award. Allowing Eni to re-arbitrate deductions to the restitution award would give Eni a mulligan for the First Arbitration. If it was dissatisfied with the result, or was entitled to other relief, it could have sought review under the FAA. . . .
"Under these circumstances, Eni's breach of contract claims aim to modify the Final Award by revisiting the core issue in the First Arbitration — was the contract terminated and, if so, what is the appropriate remedy? Had Eni wished to clarify, amend, or challenge the First Arbitration's financial award, it should have done so under the FAA within the three-month limitations period. Now, '[s]uch arbitral mulligans are forbidden by the FAA.' Eni's contract claims collaterally attack the Final Award and should have been enjoined."
(Gulf LNG Energy, LLC v Eni USA Gas Marketing LLC, 242 A3d 575, 591-592 [Del Sup Ct 2020] [footnote omitted], cert denied — US &mdash, 142 S Ct 76 [2021]).
In September 2018, Gulf commenced the underlying action against Eni S.p.A. pursuant to the Guaranty, which Eni S.p.A. executed in favor of Gulf in connection with the TUA, seeking to enforce Eni S.p.A.'s payment guarantees (Guaranty action). In its answer and counterclaim, Eni S.p.A. argued that Eni USA paid the arbitration award [*5]in full; that Gulf had exceeded its corporate purpose in breach of article 22 of the TUA; and that any breach of the TUA constituted a per se breach of section 3.1 of the DA, which incorporated the TUA's article 22 representations and warranties made by Gulf to Eni S.p.A. (DA counterclaim). As to the DA counterclaim, Eni S.p.A. alleged that Gulf's breaches of the TUA and DA "caused substantial injury and damages to Eni USA and/or Eni S.p.A." because "Gulf LNG would not have been awarded tens of millions of dollars" in the arbitration had it been found liable for breach.
In January 2022, Supreme Court granted Eni S.p.A.'s summary judgment motion and dismissed Gulf's Guaranty action because Eni USA was no longer obligated to make payments under the TUA after it was terminated, and Eni USA had paid the arbitration award. Thus, there was nothing left for Eni S.p.A. to guarantee. This Court affirmed (Gulf LNG Energy, LLC v Eni S.p.A., 213 AD3d 453 [1st Dept 2023]). About seven months later, in July 2022, Eni S.p.A. commenced an action against Gulf Port for damages under the PDA, making virtually the same allegations as it did in the DA counterclaim — that "any breach by GLE and GLP of Article 22.4 of the TUA per se creates a breach of the [PDA] by Gulf [Port]," because the PDA requires Gulf Port to "cause GLE to comply with the provisions of . . . Article 22.4 of the [TUA]" (PDA action). In other words, Eni S.p.A. alleged that Gulf had breached the TUA and thus, that Gulf Port had breached the PDA. After dismissal of Gulf's Guaranty action, all that remains are Eni S.p.A.'s DA counterclaim and PDA action.
Gulf moved for summary judgment dismissing the DA counterclaim and the PDA action, arguing that the Eni USA-Gulf arbitration and the resulting award precluded Eni S.p.A. from bringing the claims. Supreme Court agreed and found that Eni S.p.A.'s claims were barred by res judicata. We agree and now affirm.[FN1]
We address the threshold issue of privity between the parties here and in the arbitration. The identity requirement is a "linchpin of res judicata," which applies "only when a claim between the parties has been previously 'brought to a final conclusion'" (Parker v Blauvelt Volunteer Fire Co., 93 NY2d 343, 347 [1999]). "Under the res judicata doctrine, 'the concept of privity requires a flexible analysis of the facts and circumstances of the actual relationship between the party and nonparty in the prior litigation'" (Rojas v Romanoff, 186 AD3d 103, 111 [1st Dept 2020], quoting Syncora Guar. Inc. v JP Morgan Sec. LLC, 110 AD3d 87, 93 [1st Dept 2013]).
Eni S.p.A. argues that its corporate relationship with Eni USA is insufficient to demonstrate privity. To be sure, that fact, standing alone, may not be adequate to establish privity. The record evidence, however, coupled with this corporate relationship demonstrates otherwise. To determine if a party in the prior action is in privity with a nonparty to the prior action, we must consider "whether the [*6]circumstances of the actual relationship, the mutuality of interests, and the manner in which the nonparty's interest were represented in the earlier litigation established a functional representation such that the nonparty may be thought to have had a vicarious day in court" (Rojas, 186 AD3d at 111-112; see also D'Arata v New York Cent. Mut. Fire Ins. Co., 76 NY2d 659, 664 [1990]).
Here, not only does Eni S.p.A. indirectly hold 100% of the ownership interest in Eni USA, but both are also aligned by common purpose: the oil and gas industry. Eni USA is a Delaware limited liability company established for the purpose of marketing natural gas products and performing related services in the U.S. while Eni S.p.A., a corporation based in Milan, Italy, is engaged in oil and gas exploration, field development, and production, as well as the supply, trading, and shipping of LNG. As parent of Eni USA, Eni S.p.A. entered into ancillary agreements forming the basis for the TUA transactions, i.e., the Guaranty, the DA and the PDA. Eni S.p.A. guaranteed all of Eni USA's TUA payment obligations. Eni S.p.A. in the New York litigation pleaded injury to "Eni US and/or Eni S.p.A." The same counsel represented Eni USA in the arbitration and Eni S.p.A. in the New York litigation. The same fact witness, an Eni S.p.A. executive who referred to Eni S.p.A. and Eni USA as the Eni organization, testified in the arbitration and the Guaranty action. Such indicia of corporate-purpose commonality, as well as overlapping rights and interest, establish that Eni S.p.A. is in privity with Eni USA.
As for Gulf and Gulf Port, the same conclusion is reached. Unsurprisingly, Gulf and Gulf Port do not argue otherwise. In any event, the record supports privity between the two entities. Gulf Port is the 100% owner of Gulf, i.e., GLE and GLP, and share common purpose involving the oil and gas industry. Gulf Port, like Eni S.p.A., underwrote Gulf's TUA obligations by entering into the DA and the PDA.
We turn now to whether Eni S.p.A. is barred from litigating the DA counterclaim and the PDA action in the New York litigation under the principles of res judicata. The doctrine of res judicata exists to allow parties to find comfort in the finality of their lawsuits and the judgments issued in those suits. Under res judicata, or claim preclusion, a valid final judgment bars relitigation between the same parties, or those in privity with them, of a cause of action arising out of the same transaction or a series of transactions that either were raised or could have been raised in the prior proceeding (see Landau, P.C. v LaRossa, Mitchell & Ross, 11 NY3d 8, 12 [2008]). "As a general rule, 'once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy'" (Parker, 93 NY2d at 347, quoting O'Brien v City of Syracuse, 54 NY2d 353, 357 [1981]). In other words[*7], claim preclusion may foreclose litigation of a matter that never has been litigated because of a determination that it should have been interposed in a prior action (see Paramount Pictures Corp. v Allianz Risk Transfer AG, 31 NY3d 64, 73 [2018]).
The tribunal agreed with Eni USA's theory that its contractual obligations should be excused under the TUA pursuant to the frustration of purpose doctrine, and terminated the TUA as of March 1, 2016. Admittedly, the arbitration award was a final judgment on the merits, which was confirmed by the Delaware Chancery Court upon Eni USA's and Gulf's petition. Eni S.p.A. argues, however, that there was no judgment on the merits of Eni USA's asserted breach of contract claims because the tribunal found that those claims became "academic" and that there was no need for further consideration upon termination of the TUA for frustration of purpose. As a result, Eni S.p.A. contends that Supreme Court erred in dismissing the DA counterclaim and the PDA action in the absence of a merits judgment on Eni USA's undecided breach of contract claims. Put another way, assuming all other factors are satisfied to invoke claim preclusion, Eni S.p.A. argues that an undecided alternative claim in a prior proceeding does not bar subsequent litigation of it or its related claims. Essentially, the argument is that the DA counterclaim and the PDA action should get a pass from the preclusive effects of the doctrine.
Eni S.p.A. in making its novel argument fails to appreciate the significance of the TUA's termination for frustration of purpose (see Center For Specialty Care, Inc. v CSC Acquisition I, LLC, 185 AD3d 34, 42 [1st Dept 2020] ["In order to invoke the doctrine of frustration of purpose, the frustrated purpose must be so completely the basis of the contract that, as both parties understood, without it, the transaction would have made little sense"]; PPF Safeguard, LLC v BCR Safeguard Holding, LLC, 85 AD3d 506, 508 [1st Dept 2011] [frustration of purpose is found where there is a change in circumstances making one party's performance virtually worthless to the other, thus frustrating that party's purpose in making the contract]). Eni USA sought termination of the TUA based on two purportedly independent theories: frustration of purpose or Gulf's breach of article 22 of the TUA. Upon termination of the TUA for frustration of purpose, the breach of contract claims basis for termination of the TUA ceased to exist, which explains why the tribunal found the claims "academic" and deserved "no further consideration." Thus, contrary to Eni S.p.A.'s contention, there was a final judgment on the merits of Eni USA's breach of contract claims. Given that the DA counterclaim and the PDA action are inextricably intertwined with the breach of contract claims by virtue of the fact that the basis for them stems from article 22 of the TUA, Supreme Court properly dismissed them under the res judicata doctrine. Nonetheless, assuming there was no [*8]final judgment on the merits of the arbitration breach of contract claims, Eni S.p.A. would still not prevail.
Eni S.p.A. posits that in order to not deprive a litigant of an opportunity to seek redress for a bona fide claim the solution to a situation involving an asserted undecided alternative claim would be to apply a "necessarily decided" test, applicable to collateral estoppel or issue preclusion (see Allied Chem. v Niagara Mohawk Power Corp., 72 NY2d 271, 276 [1988] [issue preclusion requires that "an issue in the present proceeding be identical to that necessarily decided in a prior proceeding, and that in the prior proceeding the party against whom preclusion is sought was accorded a full and fair opportunity to contest the issue"]). Thus, according to Eni S.p.A., if pleaded and not "necessarily decided," the claim and others related to it should not be precluded in a subsequent litigation.
None of the cases relied on by Eni S.p.A. support its novel proposition. For example, City of New York v Welsbach Elec. Corp. (9 NY3d 124 [2007]) involved factual circumstances not present in the instant case — that a finding of negligence against the City in the first action did not preclude the City from filing a second action seeking indemnification against a codefendant from the first action because they were not adversarial. Nor does Miller Mfg. Co. v Zeiler (45 NY2d 956 [1978]) apply to our facts or support Eni S.p.A.'s proposition. In the Miller case, the court decided one cause of action on the merits and dismissed the remaining four, without prejudice. To be clear, Miller does not stand for the proposition that all claims dismissed without prejudice may evade the application of the doctrine of res judicata. The Miller Court noted that the record of the trial in the prior action showed that the evidence submitted "might be construed as relating to all five causes of action, [but] in fact the only issues squarely presented to the court for resolution in that action were those deemed dispositive" of the first cause of action that was actually decided, and not the remaining four causes of action. Thus, the Court received evidence relating to one of the causes of action.
The same cannot be said here where the parties agree that both theories for termination, breach of contract and frustration of purpose, were fully briefed, argued, and submitted to the tribunal. That said, we decline to endorse Eni S.p.A.'s extraordinary solution. Accepting Eni S.p.A.'s approach would cause unnecessary confusion concerning the applicability of the res judicata doctrine, and may not only undermine the judicial precedents underpinning that principle, but also engender endless litigation, wreaking havoc particularly to the commercial sector.
A pragmatic solution to resolving this issue exists: extend the transactional analysis to Eni S.p.A.'s situation, which is akin to the "could have brought a claim" scenario where an unasserted claim in which a litigant had no opportunity [*9]to be heard on it is precluded. This result addresses the aforementioned concerns while at the same time remedies Eni S.p.A.'s due process deprivation assertion — that to preclude a claim based on an undecided alternative claim as if it were adjudicated deprives a litigant of an opportunity of a merits determination (see Matter of Reilly v Reid, 45 NY2d 24, 28 [1978] ["In properly seeking to deny a litigant two days in court, courts must be careful not to deprive him of one"]). Under the transactional analysis, the test is to determine whether a claim should be precluded by viewing a claim or cause of action as conterminous with the transaction, regardless of the number of substantive theories or variant forms of relief available to a litigant (see Smith v Russell Sage Coll., 54 NY2d 185, 192 [1981]). The analysis embraces a broadened view of the scope of a claim in order to limit the number of possible actions arising out of a single controversy (see Paramount Pictures Corp. v Allianz Risk Transfer AG, 31 NY3d 64, 74-76 [2018]). The application of this test means that a final judgment on the merits of a claim or claims will bar future claims or causes of action arising from "all or any part of the transaction, or series of connected transactions, out of which the [prior] action arose" (Reilly, 45 NY2d at 29). The question for us to resolve is whether the DA counterclaim and the PDA action arise from "all or any part of the transaction, or series of connected transactions" out of which the prior arbitration arose. We hold they do.
Eni S.p.A. asserts that the DA counterclaim and the PDA action have no nexus to the Eni USA arbitration so as to not bar these claims under the transactional analysis. In advancing this argument, Eni S.p.A relies on the fact that they involve three different contracts, and were between different parties with distinct rights and obligations, as well as different available remedies.[FN2] Eni S.p.A.'s assertion is an oversimplification of the unique contractual relationship of the TUA, the DA, and the PDA. Although correctly noting that there are three distinct agreements at play, all executed contemporaneously, Eni S.p.A. overlooks the critical fact that central to the DA counterclaim and the PDA action is article 22 of the TUA. Eni S.p.A. does not seek redress in the New York litigation for breach of contractual provisions unrelated to that article, which if it had may lend support to its argument. The commonality of the claims grounded in article 22 forms the consequential interlocking thread amongst these agreements, the arbitration, and this litigation rendering Eni S.p.A.'s argument that the mere existence of ostensibly three separate agreements renders the doctrine of res judicata inapplicable unavailing. Without the TUA, there would be no DA or PDA. Thus, the claims for breach of the TUA, the DA counterclaim, and the PDA action are all contractually intertwined with one another (see e.g. Nau v Vulcan Rail & Constr. Co., [*10]286 NY 188, 197 [1941] [three instruments "executed substantially the same time, related to the same subject-matter, were contemporaneous writings . . . must be read together as one . . . [s]ince they were to effectuate the same purpose and formed a part of the same transaction"]; see generally TVT Records v The Island Def Jam Music Group, 412 F3d 82, 89 [2d Cir 2005] ["Under New York law, all writings which form part of a single transaction and are designed to effectuate the same purpose [must] be read together, even though they were executed on different dates and were not all between the same parties" [internal quotations marks omitted]).
Further, the DA counterclaim and the PDA action, grounded in article 22, arose from the same "gravamen of facts" as those put forth before the tribunal. They are based on the same Gulf activities, i.e., exploration of the liquefaction project and the commoditization of LNG during the same time period. Because the article 22 claims require a determination that there was a breach by Gulf of that article 22, they are based on the same theory (Smith, 54 NY2d at 192), the same conduct (Matter of Reilly, 45 NY2d at 29), and the same gravamen of wrong (Fajemirokun v Dresdner Kleinwort Wasserstein Ltd., 27 AD3d 320, 321 [1st Dept 2006]), that were implicated in breach of contract claims theory, which were presented and considered by the tribunal.
Finally, given the procedural history of the TUA dispute, to permit Eni S.p.A. to litigate the DA counterclaim and the PDA action would be anathema to the doctrine of res judicata. Eni USA sought to arbitrate the breach of contract claims in a subsequent arbitration. The Delaware Supreme Court enjoined that arbitration, finding that it was a collateral attack of the arbitration award, and noting that Eni USA failed to timely avail itself of the procedural opportunities to challenge that award (see Gulf LNG Energy, LLC v Eni USA Gas Marketing LLC, 242 A3d at 590-592). What Eni S.p.A. seeks to do is no different than what its subsidiary sought to accomplish, although it disguises its approach as a plenary action. The approach is a distinction without a difference, and permitting it would endorse an end run to the finality of the arbitration award, or as the Delaware Supreme Court aptly found, providing Eni S.p.A., in place of its subsidiary, with a mulligan to the arbitration and the award.
Accordingly, the judgments of the Supreme Court, New York County (Jennifer G. Schecter, J.), entered September 14 and 15, 2023, bringing up for review orders, entered June 14, 2023, which granted plaintiffs Gulf LNG Energy, LLC and Gulf LNG Pipeline, LLC's motion for summary judgment dismissing defendant Eni S.p.A.'s breach of contract counterclaims, and granted defendant Gulf LNG Energy (Port) LLC's motion for summary judgment dismissing plaintiff Eni S.p.A.'s breach of contract cause of action, should be affirmed, with costs. Appeals from aforesaid orders, unanimously dismissed as subsumed [*11]in the appeals from the judgments.
Judgments, Supreme Court, New York County (Jennifer G. Schecter, J.), entered September 14 and 15, 2023, affirmed, with costs. Appeals from June 14, 2023 orders, dismissed as subsumed in the appeals from the judgments.
Opinion by Oing, J.P. All concur.
Oing, J.P., Moulton, Mendez, Shulman, Pitt-Burke, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: September 24, 2024

Footnotes

Footnote 1: Gulf also sought summary judgment on four other grounds: statute of limitations, collateral attack doctrine, issue preclusion, and lack of merit, none of which Supreme Court addressed. Given our decision, we decline to consider them (see Brewster v Lacy, 24 AD3d 136, 137 [1st Dept 2005]).

Footnote 2: As to Eni S.p.A.'s contention that it should not be precluded from litigating the DA counterclaim and the PDA action because they were not subject to mandatory arbitration, that fact is not dispositive under the transactional test (see Marinelli Assoc. v Helmsley-Noyes Co., 265 AD2d 1, 8-9 [1st Dept 2000] [finding that even though the claims in the second action brought in Supreme Court could not have been brought in the prior arbitration, they were still barred by claim preclusion because the plaintiff was seeking relief "for harm arising out of the same or related facts such as would constitute a single 'factual grouping'"]).