COASTAL DISTRIBUTION, LLC, The New York and Atlantic Railway Company, Plaintiffs–Appellees,

v.

The TOWN OF BABYLON, a Municipal Corporation, The Town of Babylon Board of Zoning Appeals, Peter Casserly, as Commissioner of Planning and Development of the Town of Babylon, and Pinelawn Cemetery, Defendants–Appellants.

No. 06–0981–cv, 06–0989–cv.

United States Court of Appeals,
Second Circuit.

Feb. 6, 2007.

James P. Clark, Bond, Schoeneck & King, PLLC, Garden City, NY, for Defendant–Appellant the Town of Babylon.

Fran M. Jacobs, Duane Morris LLP, New York, NY, for Defendant–Appellant Pinelawn Cemetery.

Ronald A. Lane, Fletcher & Sippel LLC, Chicago, IL, for Plaintiff–Appellee the New York and Atlantic Railway Company.

John F. McHugh, New York, NY, for Plaintiff–Appellee Coastal Distribution, LLC.

PRESENT: Hon. DENNIS JACOBS, Chief Judge, Hon. GUIDO CALABRESI, Circuit Judge, and Hon. JOSEPH F. BIANCO,* District Judge.

### SUMMARY ORDER

Defendants-appellants the Town of Babylon (the "Town") and Pinelawn Cemetery ("Pinelawn") appeal from the January 31, 2006 order of the United States District Court for the Eastern District of New York (Seybert, *J.*) granting a preliminary injunction to plaintiffs-appellees Coastal Distribution, LLC ("Coastal") and the New York and Atlantic Railway Company ("NYA"), enjoining the Town from enforcing a stop work order that prohibited Coastal from continuing construction on a shed it operated on property owned by Pinelawn but leased to the Long Island Railroad ("LIRR") and NYA. *See Coastal Distrib., LLC v. Town of Babylon,* 05–CV–2032, 2006 WL 270252 (E.D.N.Y. Jan. 31, 2006).

We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review. In a nutshell, Coastal operates a transloading facility at NYA's Farmingdale Yard in Babylon, New York. Coastal loads bulk cargo from trucks onto railcars, and NYA transports the railcars from Coastal to their destinations. A variety of bulk cargo is transloaded at the facility; but the Town and Pinelawn allege that most if not all is construction and demolition debris ("C & D debris").

At the outset of this dispute, Coastal was building a large shed that the Town alleges is intended to facilitate the sorting and preparation of C & D debris. When it was very near completion, the town issued a stop work order on the construction. Coastal appealed to the Town Zoning Board of Appeals (the "ZBA"), arguing that because the Coastal facility was integral to NYA's railroad services, the enforcement of local zoning regulations was preempted by the exclusive jurisdiction of the federal Surface Transportation Board (the "STB"). *See* 49 U.S.C. § 10501(a)-(b). The ZBA ruled that Coastal's activities were not transportation by rail subject to the STB's jurisdiction.

Coastal and NYA brought this action in federal court to enjoin the enforcement of

---

* The Honorable Joseph F. Bianco of the United States District Court for the Eastern District of New York, sitting by designation.

the stop work order and the court granted a preliminary injunction.

The grant of a preliminary injunction is reviewed for abuse of discretion. *Zervos v. Verizon N.Y., Inc.,* 252 F.3d 163, 167–70 (2d Cir.2001). A district court abuses its discretion where it makes an error of law or a clear error of fact. *Forest City Daly Hous., Inc. v. Town of N. Hempstead,* 175 F.3d 144, 149 (2d Cir.1999).

A party seeking a preliminary injunction must show "(1) that it will be irreparably harmed in the absence of an injunction, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case to make them a fair ground for litigation, and a balance of hardships tipping decidedly in its favor." *Id.* But where the party seeks to enjoin "government action taken in the public interest pursuant to a . . . regulatory scheme, the less demanding 'fair ground for litigation' standard is inapplicable, and therefore a 'likelihood of success' must be shown." *Id.*

■ The district court did not abuse its discretion by granting the preliminary injunction, but it is necessary to modify the injunction to clarify that the parties are permitted to immediately seek review before the STB, which is the tribunal best equipped to decide the issues of federal transportation policy implicated here.

As to the likelihood of irreparable harm, the district court's findings were not clearly erroneous. "[I]rreparable harm may be found where damages are difficult to establish and measure," *Register.com, Inc. v. Verio, Inc.,* 356 F.3d 393, 404 (2d Cir.2004), such as where (as here) a party will otherwise lose customer relationships that account for an indeterminate amount of business over years, *see id.; Ticor Title Ins. Co. v. Cohen,* 173 F.3d 63, 69 (2d Cir.1999). It was not clearly erroneous for the district court to find that Coastal's relationships with its customers could be permanently harmed by Coastal's inability to assure customers that its business will be ongoing.

It was also not clear error to find a likelihood of success on the merits. Coastal and NYA claim that the Interstate Commerce Commission Termination Act (the "Termination Act") preempts the Town's attempts to regulate Coastal's activity in NYA's rail yard, because the STB is vested with exclusive jurisdiction over "transportation by rail carrier," which includes the construction of rail facilities. *See* 49 U.S.C. § 10501(a)-(b); *Green Mountain R.R. Corp. v. Vermont,* 404 F.3d 638, 642–43 (2d Cir.2005). In *Green Mountain,* we held that notwithstanding the Termination Act's preemption provisions, state and local authorities retain police powers to enforce regulations that "protect public health and safety, are settled and defined, can be obeyed with reasonable certainty, entail no extended or open-ended delays, and can be approved (or rejected) without the exercise of discretion on subjective questions." 404 F.3d at 643. By the same token, however, state and local authorities cannot subject the construction of railroad facilities to prepermitting processes where there are no clear construction standards and where the permit depends on the discretion of a local agency. *Id. Green Mountain,* much like this case, involved the construction of transloading facilities on railroad property, which we decided were within the STB's exclusive jurisdiction because they were "integral to the railroad's operation." *Id.* at 644; *see also City of Chicago v. Atchison, Topeka & Santa Fe R.R. Co.,* 357 U.S. 77, 87–89, 78 S.Ct. 1063, 2 L.Ed.2d 1174 (1958) (pre-ICCTA case holding that bus service between train terminals operated by a third party on a rail carrier's behalf

was an "integral part" of interstate rail transportation).

As the Town argues, *Green Mountain* does not entirely resolve this case because it is Coastal, and not NYA, that conducts the day-to-day operations at the transloading facility. One STB decision reflects the agency's view that where C & D debris transloading is conducted by a third party on rail carrier property, rather than by the rail carrier itself, the transloading operations are only "by rail carrier" (and within STB's jurisdiction) under Section 10501(a) if the rail carrier holds out its own services through the third party as an agent or exerts control over the third party's operations. *See Hi Tech Trans, LLC—Petition for Declaratory Order—Newark, NJ,* STB Finance Docket No. 34192, 2003 WL 21952136, at *3–5 (S.T.B. Aug. 14, 2003); *see also Hi Tech Trans, LLC v. New Jersey,* 382 F.3d 295, 308 (3d Cir.2004) (holding that there was no preemption because no agency relationship existed and the transloading agreement "essentially eliminates [the railroad's] involvement in, and responsibility for, the operation of Hi Tech's facility.").

The Town urges that the *Hi Tech* cases should control the result here. However, the district court found that NYA exerted sufficient control over Coastal's operations to put them within the STB's exclusive jurisdiction. This was not clear error. While no NYA employees participated in Coastal's operations, the parties' agreement (1) gave NYA supervisory control over Coastal's transloading operations and the right to inspect or audit them; (2) required that NYA's logo was to appear on all of Coastal's marketing materials for the facility and that NYA was to pre-approve all such materials; and (3) said that, although the duties under all transportation documentation would be between NYA and the end customer, Coastal could execute the documents as agent for NYA. *See Coastal,* 2006 WL 270252, at *7. Magistrate Boyle, whose report the district court adopted, explicitly found an agency relationship between Coastal and NYA based on the terms of their agreement. (The agreement in *Hi Tech* disclaimed any agency relationship, *see id.; Hi Tech,* 2003 WL 21952136, at *2; *Hi Tech,* 382 F.3d at 308.) The Town contends that the agreement does not reflect the reality of how the business is conducted, citing the preceding lease agreement, which granted Coastal a great deal more independence. But the agreement and testimony concerning it suffice to support a finding of likelihood of success at the preliminary injunction stage.

Equitable factors weigh in favor of Coastal and NYA's position. Absent the injunction, the Town will be free to shut down Coastal's operations; according to NYA, this would effectively foreclose bulk cargo transloading operations at the only suitable site on Long Island. NYA has pointed out that it has volume obligations under its franchise agreement with LIRR that would be hard to meet if it could not benefit from transloading operations at issue. *Green Mountain* recognizes the interest of state and local authorities in enforcing health and safety regulations; but it is unclear here whether such a regulation has been violated.

■ The district court properly held that abstention under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), was inappropriate. *Younger* and its progeny dictate that federal courts should decline to exercise jurisdiction where "(1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review" of federal claims. *Diamond D*

Constr. Corp. v. McGowan, 282 F.3d 191, 198 (2d Cir.2002). *Younger* abstention applies to ongoing state court proceedings, and to state administrative proceedings as well. *See Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 627, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986). The Town, citing *Diamond D,* urges that a state proceeding is ongoing whenever a party to a completed municipal administrative proceeding could have brought—but failed to bring—a state mandamus action to challenge the outcome. *Diamond D* does not support the Town's position, because in that case state administrative proceedings were still ongoing when the plaintiff brought a Section 1983 action and sought to preliminarily enjoin the state proceedings. 282 F.3d at 196. The parties conceded the general applicability of *Younger, id.* at 199, and we held that the "extraordinary circumstances" exception to *Younger* was inapplicable in part because the plaintiff had an adequate state remedy in the form of a mandamus proceeding in state court through which the plaintiff could have raised federal constitutional claims, *id.* at 201–02. There are no ongoing state proceedings here: the ZBA issued its final decision before the federal action was brought. *Diamond D* gives no support to the proposition that the availability of an Article 78 action *after* the completion of state administrative proceedings renders them ongoing perpetually.

■ The appellants also argue that the ZBA's factual determinations were entitled to issue-preclusive effect. The "full faith and credit" provisions of 28 U.S.C. § 1738 apply only to state courts and not state administrative agencies. But under federal common law principles of issue-preclusion, the determination of a state administrative agency acting in a judicial capacity is generally entitled to the same issue-preclusive effect in federal court that it

would be afforded in state court, provided the parties have had an adequate opportunity to litigate the issue. *See Univ. of Tenn. v. Elliott,* 478 U.S. 788, 799, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986). New York courts apply issue-preclusive effect to the quasi-judicial findings of state administrative agencies, as well as municipal zoning boards, *see Town of Wallkill v. Lachmann,* 27 A.D.3d 724, 813 N.Y.S.2d 157, 158 (N.Y.App. Div.2d Dep't 2006), but ordinarily do so only in actions brought beyond the period of limitation for an Article 78 challenge to the agency's decision. *See, e.g., Allied Chem. v. Niagara Mohawk Power Corp.,* 72 N.Y.2d 271, 532 N.Y.S.2d 230, 528 N.E.2d 153, 157 (1988) (affirming application of issue preclusion but noting that the lower court properly declined to convert proceeding into an Article 78 proceeding because four month review period had elapsed before the action was initiated). Here, if the appellees had brought suit in an Article 78 state court proceeding—which would have been timely as of the date of the federal complaint—rather than an action in federal court, the state court would not have given the ZBA findings issue-preclusive effect: it would have reviewed them using a deferential standard of review after hearing any additional evidence it deemed necessary. *See Doyle v. Amster,* 79 N.Y.2d 592, 584 N.Y.S.2d 417, 594 N.E.2d 911, 913 (1992) ("[C]ourts may not interfere with [municipal zoning] decisions enjoying a rational basis, supported by substantial evidence in the record."); N.Y. Town Law § 267–c(4) ("If ... it shall appear to the court [reviewing a zoning board determination] that testimony is necessary ..., it may take evidence ..., which shall constitute a part of the proceedings upon which the determination of the court shall be made."). *Elliott* does not hold that state law supplies the standard of review when a municipal administrative decision is timely challenged on

federal preemption grounds in the federal forum. The very basis for federal jurisdiction here was the appellees' assertion that the Town and its ZBA were preempted by federal law from taking any action to regulate Coastal's activities; and that issue was never reviewed by any court, state or federal. For these reasons, the district court did not err by refusing to grant the ZBA's unreviewed findings preclusive effect.

Nevertheless, we conclude that the preliminary injunction must be modified. At oral argument, counsel for the Town represented that the Town and Pinelawn had refrained from petitioning the STB to define its jurisdiction (or lack thereof) over Coastal's operations because the preliminary injunction prohibited the Town from doing so. We doubt that the district court intended that inhibition. In any event, we modify the preliminary injunction to allow the parties to petition the STB for a declaratory judgment on the scope of its jurisdiction. "As the agency authorized by Congress to administer the Termination Act, the [STB] is uniquely qualified to determine whether state law should be preempted by the Termination Act." *Green Mountain,* 404 F.3d at 642 (citation and internal quotation marks omitted). Given the existing guidance from this Court and the STB, the district court did not abuse its discretion by issuing a preliminary injunction, but it is wholly appropriate that the parties should seek further guidance from the STB notwithstanding the pendency of litigation in federal court.

We have considered the Town's and Pinelawn's remaining arguments and find them to be without merit. For the reasons set forth above, the preliminary injunction is hereby modified to allow either party to file a petition to the STB for a declaratory judgment as to whether the operations at issue in this case are within the STB's jurisdiction, and—as modified—the preliminary injunction is affirmed.