■ PINELAWN CEMETERY, Appellant, v COASTAL DISTRIBUTION, LLC, et al., Respondents. [906 NYS2d 565]—

In an action, inter alia, for a judgment declaring that a certain lease dated August 30, 1904, was terminated, the plaintiff appeals, as limited by its brief, from so much of an order of the Supreme Court, Suffolk County (Costello, J.), dated February 19, 2009, as, upon renewal, adhered to the original determination in an order dated January 8, 2008, granting the separate motions of the defendants Coastal Distribution, LLC, and New York & Atlantic Railway for summary judgment dismissing the complaint insofar as asserted against each of them and, in effect, directing the dismissal of the complaint against all of the defendants on the ground that its claims were preempted by that provision of the Interstate Commerce Commission Termination Act which grants exclusive jurisdiction to the United States Surface Transportation Board to regulate the abandonment of railroads.

Ordered that the order is reversed insofar as appealed from, on the law, with one bill of costs payable by the respondents appearing separately and filing separate briefs, upon renewal, the order dated January 8, 2008, is vacated, the motions of the defendants Coastal Distribution, LLC, and New York & Atlantic Railway for summary judgment dismissing the complaint insofar as asserted against them are denied, and the matter is remitted to the Supreme Court, Suffolk County, for the imposition of a stay of any further proceedings in this action pending resolution by the United States Surface Transportation Board of the issue of whether the subject railroad has been abandoned.

In 1904 and 1905, the plaintiff, Pinelawn Cemetery (hereinafter Pinelawn), leased two parcels of real property to the defendant Long Island Rail Road (hereinafter the LIRR) for a term of 99 years, with an option to renew each lease for a second term of 99 years, provided that the LIRR exercised that option in writing at least three months prior to the termination of each lease. The LIRR constructed two railroad tracks on the two parcels, which are collectively referred to as the Farmingdale Yard. Although it is undisputed that the LIRR properly renewed the 1905 lease, the primary issue in this case is whether the LIRR properly renewed the 1904 lease.

In 1996 the LIRR transferred its freight operations, including the facilities at the Farmingdale Yard, to the Southern Empire State Railroad Company, which subsequently changed its name to the defendant New York & Atlantic Railway (hereinafter NYAR). In 2002 NYAR, a licensed rail carrier, subleased the Farmingdale Yard to the defendant Coastal Distribution, LLC (hereinafter Coastal), which uses the site as a transloading facility to weigh, sort, and load construction and demolition debris onto railroad cars that are bound for Ohio.

In March 2004 the Town of Babylon issued a stop work order, which prohibited Coastal from completing the construction of a three-sided shed at the Farmingdale Yard. In August 2004 Coastal and NYAR replaced the sublease with a transload facility operations agreement, whereby NYAR engaged Coastal as its "contractor" to operate the transloading facility. Coastal applied to the Town's Zoning Board of Appeals (hereinafter the ZBA) to annul the stop work order on the ground that it was exempt from the local zoning laws because it was governed by the Interstate Commerce Commission Termination Act (49 USC § 10101 et seq.) (hereinafter the ICCTA), which grants exclusive jurisdiction upon the United States Surface Transportation Board (hereinafter the STB) over most railroad matters. In April 2005 the ZBA upheld the stop work order on the ground that Coastal's activities did not constitute transportation by a rail carrier within the meaning of the ICCTA.

In a related federal action, the United States District Court for the Eastern District of New York granted Coastal's and NYAR's request to preliminarily enjoin the Town from enforcing the stop work order. On appeal, the United States Court of Appeals for the Second Circuit modified the injunction to permit the parties to seek a declaratory order from the STB on the scope of its jurisdiction (see Coastal Distrib., LLC v Town of Babylon, 2006 WL 270252, 2006 US Dist Lexis 8400 [ED NY 2006], affd in part and mod in part 216 Fed Appx 97 [2d Cir

2007]). In a decision dated January 31, 2008, the STB determined that it did not have jurisdiction because Coastal's transloading activities at the Farmingdale Yard did not constitute transportation by a rail carrier (see *Town of Babylon and Pinelawn Cemetery—Petition for Declaratory Order*, 2008 WL 275697 [Jan. 31, 2008]).

In April 2004 Pinelawn commenced the present action in the Supreme Court, Suffolk County, against Coastal, NYAR, the LIRR, and its parent company, the Metropolitan Transportation Authority. The amended complaint asserted seven causes of action seeking, inter alia, a judgment declaring that the defendants failed to renew the 1904 lease, injunctive relief, and damages for trespass and negligent misrepresentation. In essence, Pinelawn sought to evict the defendants from the parcel that was the subject of the 1904 lease.

In April 2007 Coastal and NYAR had separately moved for summary judgment dismissing the complaint insofar as asserted against each of them on the ground that the Supreme Court's jurisdiction over the subject matter was preempted by the ICCTA. In an order dated January 8, 2008, the Supreme Court granted both motions for summary judgment and directed the dismissal of the complaint against all of the defendants based on the federal court decisions.

After the STB determined that it did not have subject matter jurisdiction, Pinelawn moved pursuant to CPLR 2221 (e) for leave to renew its opposition to the previous motions for summary judgment on the ground that the STB decision contradicted the federal court decisions upon which the Supreme Court had relied. In an order dated February 19, 2009, the Supreme Court granted Pinelawn's motion for renewal and, upon renewal, adhered to its original determination granting the motions of Coastal and NYAR for summary judgment and, in effect, directing dismissal of the complaint against all of the defendants on the ground that the STB had exclusive jurisdiction to regulate the abandonment of railroads.

The general jurisdiction provision of the ICCTA states, in relevant part, that the STB has exclusive jurisdiction over "the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State" (49 USC § 10501 [b] [2]). Moreover, 49 USC § 10501 (b) contains an express preemption clause, which provides that "[e]xcept as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law."

The procedure for abandoning or discontinuing rail transportation over any part of a railroad line is set forth in 49 USC § 10903. Among other requirements, the statute provides that "[a] rail carrier providing transportation subject to the jurisdiction of the [STB] under this part who intends to" abandon or discontinue service over a railroad line must apply to the STB for approval (49 USC § 10903 [a] [1]). If the STB finds that public convenience and necessity require or permit the abandonment or discontinuance, it will generally approve the application (see 49 USC § 10903 [d], [e]).

Although 49 USC § 10903 (a) (1) states that a "rail carrier" must file the application, there is a long line of cases recognizing that non-carriers who have a sufficient interest in the property may apply for a certificate of abandonment. This procedure is known as an adverse abandonment (see e.g. Thompson v Texas Mexican R. Co., 328 US 134 [1946]; Howard v Surface Transp. Bd., 389 F3d 259 [2004]; Consolidated Rail Corp. v I.C.C., 29 F3d 706 [1994]; Modern Handcraft, Inc.-Abandonment in Jackson County, Mo., 363 ICC 969 [1981]).

Normally, a dispute between a landlord and a tenant is resolved according to state law. When these disputes affect interstate commerce, however, the STB's primary jurisdiction over the abandonment or discontinuance of rail service deprive a landlord of the customary recourse to the courts until the STB removes its primary jurisdiction. The proper way for the STB to remove its primary jurisdiction is through an adverse abandonment proceeding. If the STB grants an adverse abandonment application, the landlord can seek an eviction (see City of Peoria & the Village of Peoria Heights, Ill.—Adverse Discontinuance—Pioneer Indus. Ry. Co., STB Docket No. AB-878, 2005 WL 1900922 [Aug. 9, 2005]).

Thus, instead of dismissing the complaint in its entirety, the Supreme Court should have stayed all proceedings in the action pending a determination by the STB of the issue of abandonment (see Thompson v Texas Mexican R. Co., 328 US 134 [1946]; Chicago & N. W. Ry. Co. v Chicago, Milwaukee, St. Paul & Pac. R. Co., 502 F2d 193 [1974]; City of Des Moines, Iowa v Chicago & N.W. Ry. Co., 264 F2d 454 [1959]; City of New York v Tri-State Brick & Stone of N.Y., 17 Misc 3d 1117[A], 2007 NY Slip Op 52050[U] [2007]). Dillon, J.P., Balkin, Hall and Lott, JJ., concur.